**Arthur B. POWERS, Plaintiff-Appellant,**

v.

**Austin J. McGUIGAN and Glenn E. Coe, Defendants-Appellees.**

**No. 1274, Docket 85–7211.**

United States Court of Appeals, Second Circuit.

Argued May 30, 1985.

Decided July 29, 1985.

Timothy C. Moynahan, Waterbury, Conn. (Moynahan & Ruskin, Waterbury, Conn., of counsel), submitted a brief for plaintiff-appellant.

David S. Golub, Stamford, Conn. (Leora Herrmann, Silver, Golub and Sandak, Stamford, Conn., John M. Massameno, Office of the Chief State's Atty., Wallingford, Conn., on the brief), for defendants-appellees.

Before KAUFMAN and KEARSE, Circuit Judges, and MISHLER, District Judge.*

KEARSE, Circuit Judge:

In this, his second, appeal to this Court in this matter, plaintiff Arthur B. Powers appeals from a final judgment of the United States District Court for the District of Connecticut, T.F. Gilroy Daly, *Chief Judge,*

* Senior Judge of the United States District Court for the Eastern District of New York, sitting by designation.

summarily dismissing his complaint brought under 42 U.S.C. § 1983 (1982), against defendants Austin J. McGuigan, Chief Attorney for the State of Connecticut, and Glenn E. Coe, McGuigan's former chief trial counsel, for various relief on account of defendants' alleged bad faith prosecution of Powers, former Commissioner of the State of Connecticut Department of Transportation ("CDOT"), on charges of corruption. On Powers's first appeal, challenging a judgment dismissing his complaint for failure to state a claim upon which relief could be granted, this Court reversed in part, ruling that Powers was entitled to attempt to show that his constitutional right to a fair trial in the criminal prosecution had been violated by alleged news leaks by the defendants. *Powers v. Coe*, 728 F.2d 97 (2d Cir.1984) ("*Powers I*"). Following the remand in *Powers I*, further proceedings were held, culminating in the court's granting a motion by the defendants for summary judgment dismissing the complaint on the ground that, regardless of any alleged conduct of the defendants, Powers could not show that such conduct caused him to be deprived of a fair trial. On this appeal, Powers contends that summary judgment was foreclosed by our decision in *Powers I* and that he was improperly precluded from conducting discovery needed to oppose defendants' summary judgment motion. Finding no merit in Powers's arguments, we affirm.

## I. BACKGROUND

The background of this action is set out in detail in *Powers I*, familiarity with which is assumed, and will be briefly summarized here. In 1981, McGuigan began an investigation into charges of corruption in CDOT, of which Powers was then Commissioner. After one of Powers's appearances before the one-person grand jury that had been convened to look into the charges, McGuigan agreed that if Powers resigned from his office he would not be prosecuted, provided that no evidence was subsequently uncovered showing that Powers had engaged in serious felonious conduct in the

performance of his duties. Powers resigned.

Thereafter, Powers had several telephone conversations with one Joseph Hirsch, a prospective witness of the grand jury who was a contractor who did business with CDOT. Hirsch was a close friend of Powers and godfather to one of Powers's children; he had consented to a wiretap on his calls to Powers. As a result of these conversations, Powers was arrested on state charges of attempted obstruction of justice. Both the Connecticut press and the electronic media had carried reports on the entire Powers matter from the beginning.

On the day before his criminal trial was to begin in state court, Powers commenced the present federal action, seeking an injunction against the prosecution, along with declaratory and monetary relief, on the theory, *inter alia*, that the defendants had deliberately leaked to the press information about the CDOT investigation. Powers asserted that the publicity had made it impossible for him to have a fair trial on the criminal charges. The district court denied Powers an injunction, *see Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and the criminal trial began as scheduled. Three weeks later, Powers pleaded guilty to two misdemeanor counts pursuant to a plea bargain under which the other charges against him were dismissed.

### A. Powers I

Shortly after the entry of Powers's guilty plea, the district court dismissed his complaint in the present action on the ground that it failed to state a claim upon which relief could be granted. Although we agreed with the court's conclusions as to most of the claims asserted, we reversed insofar as the complaint alleged that defendants had deprived him of a fair trial by systematically leaking to the press information relating to their investigation. We ruled that Powers was entitled to have an opportunity to prove that claim, and we remanded for further proceedings.

In making our ruling, we outlined certain factors that Powers would have to prove in order to prevail on the surviving claim. In addition to showing that there were leaks that were unnecessary in scope, nature, and number, we stated that Powers would have to show that he had " '*in fact* been denied [his] due process rights.' *Martin v. Merola,* 532 F.2d [191,] 194 [ (2d Cir.1976) (per curiam) ] (emphasis added)." 728 F.2d at 105. Finally, we pointed out that

> the showing that must be made involves more than a showing that there were improper leaks and that there was deprivation of a fair trial. While there need not be a showing that the defendant(s) herein knew that the leaks would tend to cause such a deprivation or intentionally gave them to the media, ... there must be a showing that other remedies were not available, or were used to no avail, to alleviate the effects of the leaks, e.g., a thorough voir dire, utilization of challenges both peremptory and for cause, a motion to disqualify a biased judge (we do not suggest that there was such in this case), a motion to change venue, or the like. In other words, there must be a showing of causation; if Powers was deprived of a fair trial he has to show that such deprivation was not "too remote a consequence" of the improper leaks to the press.

*Id.* at 105 (citations omitted). We ended our discussion of this claim by stating that "anything we have said, of course does not foreclose, on appropriate papers, summary judgment." *Id.* at 106.

### B. *Proceedings on Remand*

On remand, Powers immediately sought to take McGuigan's deposition in order to establish, *inter alia,* that defendants were the source of the news leaks about the investigation. Defendants moved for a protective order on the ground that such discovery was unnecessary because Powers could not establish that the news leaks had in fact deprived him of a fair trial. On that premise, defendants moved for summary judgment dismissing Powers's remaining claim.

In support of their motion for summary judgment, defendants asserted that Powers could not show that the jury selected at his criminal trial was in fact prejudiced against him or that he had used any legal measures at his disposal to alleviate any prejudice he may have perceived. Defendants submitted a copy of the state court transcript of the jury selection proceedings showing, *inter alia,* that during the voir dire, defense counsel inquired of each prospective juror concerning the effects, if any, of the publicity about the case. The results of this questioning suggested that there was no adverse effect from the prior publicity. No prospective juror indicated that he or she had any preconception about the case due to exposure to pretrial publicity; no prospective juror indicated any knowledge of the particular facts of the case or any familiarity with the contents of any particular news report; every juror selected stated that he or she would be impartial and presumed Powers to be innocent; no one selected as a juror had prior knowledge of the facts of the case.

The jury selection process proceeded expeditiously, taking some seven hours; the jury and alternates were selected after examination of 22 prospective jurors. Powers did not challenge any prospective juror for cause, and he did not use all of his peremptory challenges. At the end of the selection process, two of Powers's original eight peremptory challenges remained unused.

Although prior to trial Powers had brought a motion to dismiss the charges against him on the ground, *inter alia,* that improper prosecutorial leaks to the media had denied him the opportunity for a fair trial, at no time prior to or during the trial did Powers suggest that any particular juror or alternate was biased. At no time prior to or during the trial did he move for a change of venue.

The evidence presented by defendants in support of their motion also showed that some three weeks after the trial had begun, Powers entered into a plea bargain pursuant to which he pleaded guilty to two

misdemeanor offenses. He stated that his pleas were being entered without coercion and that he was aware that he was constitutionally entitled to a trial by jury. Neither Powers nor his counsel made any claim at that time that Powers's pleas were in any way brought about by a perception that Powers could not obtain a fair trial.

In opposition to defendants' motion for summary judgment, Powers submitted an affidavit stating that he had "pled guilty ... because [he] felt it was impossible to obtain a fair trial" because of the prejudicial publicity. He contended that the jurors' statements that they were uninfluenced by the publicity were "unreliable," that "[e]ight peremptory challenges were completely useless ..." to alleviate the claimed juror prejudice, and that he had "instructed [his] attorney not to file a motion to change venue" because he believed it impossible to obtain a fair trial anywhere in the State of Connecticut.

## C. *The Ruling of the District Court*

Defendants' motion was referred to United States Magistrate Thomas P. Smith, who recommended that it be granted. After reviewing the guidance given by this Court in *Powers I,* and the parties' respective submissions, the magistrate concluded that Powers's guilty plea, coupled with the fact that he had chosen not to avail himself of any of the traditional means of avoiding or alleviating possible prejudice resulting from pretrial publicity, made it virtually impossible for him to demonstrate that that publicity had in fact caused him to be deprived of a fair trial. The magistrate found that Powers had not made a sufficient showing of disputed material facts to withstand the entry of summary judgment against him:

> Aside from plaintiff Powers' offering 79 newspaper articles to demonstrate the undeniably extensive publicity in this case and affidavits alleging secret meetings between defendant McGuigan and reporters, Powers offers no concrete particulars to support his allegations of "futility" or to demonstrate a causal link

between the nature of this publicity and the alleged denial of a fair trial. Although constitutional questions should not be decided on an incomplete factual basis, summary judgment may be rendered where the record is adequate for the constitutional question presented and there is no genuine issue of material fact....

> Here, the record is adequate and plaintiff has failed to show that questions of material fact exist.

(Magistrate's Report dated January 4, 1985, at 5–6.) The magistrate concluded that

> the conclusory allegations offered by the plaintiff are inadequate to defeat summary judgment. As observed by the Supreme Court, "it is not asking too much that the burden of showing essential unfairness be sustained by him who claims such injustice and seeks to have the result set aside, and that it be sustained not as a matter of speculation but as a demonstrable reality."

(*Id.* at 9 (quoting *United States ex rel. Darcy v. Handy,* 351 U.S. 454, 462, 76 S.Ct. 965, 970, 100 L.Ed. 1331 (1956)).) The magistrate rejected Powers's argument that summary judgment should not be entered before he had had an opportunity to take the deposition of McGuigan on the ground that McGuigan had no role in the jury selection process or in the trial to the jury.

The district court adopted, approved, and ratified the recommendation of the magistrate, and ordered that judgment be entered dismissing the complaint. This appeal followed.

## II. Discussion

On this appeal, Powers contends that the entry of summary judgment against him was foreclosed by our opinion in *Powers I,* that summary judgment could not properly be granted without giving him an opportunity to conduct discovery, and that the district court made its ruling by impermissibly finding a fact that could be decided only after a trial in this action, *i.e.,* that Powers

had received a fair criminal trial. We reject all of these contentions.

First, our opinion in *Powers I* in no way foreclosed the possibility of summary judgment. Indeed, we stated explicitly that such a summary disposition could occur upon an appropriate showing.

■ Second, a party may properly seek a continuance under Fed.R.Civ.P. 56(f) in order to seek discovery for the purpose of opposing a motion for summary judgment; however, where the discovery sought would not meet the issue that the moving party contends contains no genuine issue of fact, it is not an abuse of discretion to decide the motion for summary judgment without granting discovery.

■ Finally, Powers's contention that the district court impermissibly found as a matter of fact that he had received a fair trial misconstrues the decision of that court. The basis for the district court's decision was not that Powers had in fact received a fair trial but that he had not shown any facts suggesting that there was any causal link between the pretrial publicity and the claimed unfairness of his trial. (*See* Magistrate's Report at 3, 6.) This ruling was not erroneous.

Powers's trial did not reach the stage of a decision by the jurors; rather, two weeks after trial commenced, Powers pleaded guilty. As we indicated in *Powers I,* this made his task of showing that the pretrial publicity had deprived him of his rights more difficult, since he had to show that that publicity caused him to be found guilty. The defendants presented undisputed evidence that when Powers pleaded guilty, he did not in any way indicate that he did so because of pretrial publicity or because he did not believe he could be tried fairly. This, together with the facts, also undisputed, (a) that Powers had pursued none of the traditional avenues for neutralizing the effects of adverse pretrial publicity, such as moving for a change of venue, (b) that the responses of the jurors during the voir dire suggested that the pretrial publicity would not interfere with their ability to decide the case impartially and objectively, (c) that Powers ventured no challenges for cause on the ground of juror exposure to publicity, (d) that Powers left a substantial percentage of his peremptory challenges unused, and (e) that Powers's guilty plea was not entered until after he had heard some two weeks' worth of the evidence against him, presented a strong picture of a defendant whose guilty plea was not caused by the pretrial publicity.

Powers's substantive response to the summary judgment motion was, as the district court found, inadequate to meet the requirements of Fed.R.Civ.P. 56(e). His affidavit stated that the traditional avenues had, in effect, not been available to him because they would have been futile: the jurors' responses were unreliable, the use of peremptory challenges would have been useless, and the publicity had been so pervasive that he could not have received a fair trial anywhere in the State of Connecticut. The district court properly considered these assertions speculative and conclusory; and since they were not supported by any factual presentation, they were insufficient to defeat summary judgment. Powers's argument that he had presented evidence of some 69 pretrial news articles bearing on his case misses the mark. The existence of the publicity merely provides the occasion for an inquiry into *whether* it caused an unfair trial; the publicity is an insufficient basis for answering that question in the affirmative or for opposing a motion that strongly suggests that the publicity itself did not cause the conviction.

We have considered all of Powers's arguments on this appeal and have found them to be without merit.

CONCLUSION

The judgment of the district court is affirmed.