**AGENCY DEVELOPMENT, INC.,**
**a Michigan corporation, et**
**al., Plaintiffs,**

v.

**MED AMERICA INSURANCE COM-**
**PANY of New York, A New York**
**Corporation, et al., Defendants.**

No. 02–CV–6663L.

United States District Court,
W.D. New York.

March 24, 2004.

Brian H. Rolfe, Joseph Falcone, Falcone & Rolfe, P.C., Southfield, MI, for Plaintiffs.

Daniel J. Moore, Harris Beach LLP, Pittsford, NY, for Defendants.

## DECISION AND ORDER

LARIMER, District Judge.

### INTRODUCTION

Plaintiffs Agency Development, Inc. ("ADI") and Patrick D. Patterson ("Patterson"), ADI's President and Managing General Agent, commenced this action against MedAmerica Insurance Company of New York ("MANY") and its various parent and affiliated companies ("defendants") asserting federal and state antitrust and common law claims, including breach of contract, fraud, and unfair competition. Plaintiffs allege that defendants conspired with former ADI officers and employees to restrain trade, attempted to monopolize or created a monopoly in the individual long term care insurance ("LTCI") market in the Rochester, New York area in violation of the Sherman Act, 15 U.S.C. §§ 1 and 2, and engaged in various unfair business practices, all in an effort to drive ADI out of business and reduce competition.

There are several motions currently pending before the Court. Defendants have moved for summary judgment [1] (Dkt. # 24) and for sanctions pursuant to Fed. R.Civ.P. 11 (Dkt. # 29). Plaintiffs have filed three separate motions for leave to amend the complaint to add new claims and an additional party defendant.[2]

1. Although defendants' motion is styled as a motion to dismiss or, in the alternative, for summary judgment, regardless of nomenclature, I treat it as a motion for summary judgment, as do the parties. Defendants filed the motion after filing their answer. In support of the motion, defendants filed affidavits with exhibits from parties and witnesses, as well as a statement of material facts not in dispute, pursuant to Local Rule of Civil Procedure 56. (Dkt. ## 24, 25).

In opposing the motion, plaintiffs filed an affidavit from plaintiff Patterson, with voluminous exhibits, that references and responds to the defendants' affidavits. (Dkt. # 41). In addition, plaintiffs also filed a statement of material facts and submitted an affidavit, pursuant to Rule 56(f), from plaintiffs' attorney that opposed summary judgment because there has been no discovery. (Dkt. ## 34, 38).

2. Plaintiffs originally moved for permission to amend their amended complaint in Dkt. # 36. However, plaintiffs filed an "amended" motion for permission to file a second amended complaint (Dkt. # 43), which was meant to replace Dkt. # 36 in its entirety. There were no substantive differences between the mo-

For the reasons set forth below, the Court grants in part and denies in part plaintiffs' motions to amend. The Court treats defendants' motion for summary judgment relative to plaintiffs' complaint as amended. Defendants' motion for summary judgment is granted. Defendants' motion for sanctions is denied.

## FACTS

The following facts are not in dispute. Long term care generally is understood to mean institutional or non-institutional health care, including nursing home care and home health care. Most often, long term care is needed when a person suffers a chronic or disabling condition which requires nursing care or constant supervision. (Dkt. # 24, Patterson Aff., Ex. B).

Plaintiff[3] is in the business of selling LTCI products underwritten by various insurance companies. MANY is an insurance company that administers and underwrites LTCI policies in New York State. MANY is a for-profit corporation organized under Article 42 of the New York Insurance Law. Excellus Health Plan, Inc., MANY's parent corporation, is a subsidiary of Excellus, Inc., which is a New York not-for-profit corporation. The Excellus companies provide health insurance coverage as licensees of Blue Cross and Blue Shield.

In 1991, MANY[4] entered into a written contract with plaintiff in which plaintiff agreed to train and employ insurance agents to sell MANY's LTCI products in the six-county Rochester Region.[5] In turn, MANY agreed to pay first-year and renewal commissions to plaintiff based on the premiums paid for the policies sold by plaintiff's agents. Pursuant to its express terms, either party could terminate the contract, with or without cause, on thirty days written notice to the other party. (Dkt. # 25, Ex. 2). By the late 1990s, eighty percent of MANY's business was generated by plaintiff's agents.

In 1998, the parties amended their contract to allow ADI's agents to sell LTCI of Network America, a subsidiary company of Penn Treaty, Inc., a competitor of MANY. MANY permitted ADI to sell Network America LTCI, but under very specific and limited circumstances. For instance, MANY had a right-of-first-refusal on all applications for insurance and ADI's sales agents received lower commissions from sales of Network America policies. Further, MANY received a percentage of the premiums collected by ADI from these sales as a "handling fee." (Dkt. # 24, Patterson Aff., Ex. D).

In January of 1999, Penn Treaty, MANY's competitor, purchased ADI and became its parent company. On July 7, 1999, MANY gave thirty days written notice to plaintiff that it was terminating the contract as of August 6, 1999.

Several months before MANY terminated the contract, ADI had moved its offices into MANY's headquarters in Rochester. Subsequent to that move, on July 6, 1999, Eric Dellinger, ADI's Senior Vice President of the Rochester Region, resigned and took a position with MANY. (Dkt. # 41, Patterson Aff. ¶ 116; Dkt. # 24, Dellinger Aff., ¶¶ 4, 10). On the same day that

tions. Plaintiffs' first motion to amend (Dkt. # 36) is deemed withdrawn.

**3.** For ease of reference, the singular "plaintiff" or "ADI" will be used to refer to ADI and Patterson.

**4.** At the time, MANY operated under the name Finger Lakes Long Term Care Insurance Company.

**5.** The six-county Rochester Region in New York is comprised of Wayne, Monroe, Livingston, Ontario, Yates, and Seneca counties.

MANY terminated the contract, William Gilbert, another ADI officer, resigned to take a position with MANY. In August 1999, Anne Cahill, ADI's top selling agent, resigned from ADI and began working as an agent for MANY. (Dkt. # 49, Cahill Aff., ¶ 11). In 2001, other ADI officers and agents, including Kenneth Schroeder, Peter Embury, and William Jones, left ADI to work for MANY or to sell MANY's or one of its corporate affiliate's LTCI.

Since MANY terminated the contract, it continues to pay ADI renewal commissions pursuant to the terms of the contract. From 1999 to 2001, those commissions exceeded $5,000,000.

### PLAINTIFF'S ALLEGATIONS

Plaintiff filed a lengthy, detailed proposed second amended complaint (Dkt. # 43) and two follow-up motions to amend the proposed second amended complaint (Dkts. ## 51, 53). In all, plaintiff asserts nine federal and state law antitrust and common law claims that are based essentially on the same factual allegations. Plaintiff alleges that defendants engaged in a course of conduct designed to put plaintiff out of business, to restrain trade and to secure a monopoly in the LTCI market in the Rochester, New York area.

Specifically, plaintiff claims that defendants secretly raided ADI's officers and agents while the parties still had an agency relationship and then terminated the contract with ADI and created its own in-house sales force. Plaintiff alleges that, since then, defendants unfairly compete with plaintiff by utilizing MANY's corporate affiliation with its Excellus parent companies who are licensees of the Blue Cross and Blue Shield mark and logo. Because Blue Cross and Blue Shield of Rochester insures seventy percent of the population of the Rochester Region, defendants have access to prospective customer information which is not available to ADI or other competitors of MANY.

Plaintiff claims that by engaging in this course of conduct, defendants have acted with the intent to put plaintiff out of business and reduce competition in the LTCI market by destroying a company that sells competing LTCI in the relevant market. Plaintiff alleges that MANY has achieved a sixty to seventy percent market share in the LTCI market in the Rochester Region. Because of its market advantage, and its improper use of its Blue Cross and Blue Shield affiliation, competitors of MANY, including plaintiff, find it difficult to compete effectively in the LTCI market. Therefore, plaintiff alleges that overall competition in the LTCI market has been adversely affected.

Plaintiff claims that defendants have restrained trade and created a monopoly or attempted to create a monopoly in the LTCI market, in violation of the Sherman Act, 15 U.S.C. §§ 1 and 2, and New York's Donnelly Act, N.Y. Gen. Bus. L. § 340. Plaintiff also claims that defendants violated the Lanham Act, 15 U.S.C. § 1125(a), and New York's Unfair Competition Law, N.Y. Gen. Bus. L. § 349, by misrepresenting the nature of its business as not-for-profit and its product as a Blue Cross and Blue Shield insurance product. Finally, plaintiff asserts common law fraud, breach of contract, and other related state law claims against defendants.

### DISCUSSION

#### I. Summary Judgment Standards

Defendants are entitled to summary judgment if they can show as a matter of law that there is no genuine issue as to any material fact that would require a trial of the action. Fed.R.Civ.P. 56(c). Defendants have the initial burden of proving, through affidavits and other evidence, the

absence of genuine factual issues. If they meet this burden, plaintiff then has the burden of producing probative evidence and "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Although summary judgment "may be difficult to obtain due to the factual complexities of antitrust cases, the motion can serve as a tool by which 'to isolate and dispose of factually unsupported claims.'" *Virgin Atl. Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 263 (2d Cir.2001) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Tops Mkts., Inc., v. Quality Mkts., Inc.*, 142 F.3d 90, 95 (2d Cir.1998) ("By avoiding wasteful trials and preventing lengthy litigation that may have a chilling effect on pro-competitive market forces, summary judgment serves a vital function in the area of antitrust law.").

## II. Antitrust Claims

The Clayton Act, 15 U.S.C. § 15, allows a private party like ADI to sue under federal antitrust laws, including the Sherman Act, for violations of those laws. The Clayton Act reads, in pertinent part, that "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States ..., and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee." 15 U.S.C. § 15(a).

■ A threshold requirement for proceeding under the Clayton Act is to show that plaintiff has standing to sue. To have standing, ADI must demonstrate that it suffered an "injury" as a result of defendants' actions; an injury that the antitrust laws were meant to prevent. Merely showing that it was harmed in some fashion by defendants' conduct is not enough. *Balaklaw v. Lovell*, 14 F.3d 793, 797 (2d Cir.1994) (plaintiff "must show more than that the defendants' conduct caused [it] an injury."). Rather, the injury suffered by plaintiff must be attributable to the anticompetitive aspect of the practice of the defendants that is under scrutiny, "since '[i]t is inimical to [the antitrust] laws to award damages' for losses stemming from continued competition." *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334, 110 S.Ct. 1884, 109 L.Ed.2d 333 (1990) (quoting *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 109–110, 107 S.Ct. 484, 93 L.Ed.2d 427 (1986)). If competition is not affected, there is no injury.

■ The antitrust injury requirement ensures that a plaintiff recover only if the loss stems from a competition-*reducing* aspect or effect of the defendants' behavior. *Atl. Richfield*, 495 U.S. at 334, 110 S.Ct. 1884; *see also Virgin Atl. Airways*, 257 F.3d at 265. The antitrust injury requirement applies equally to plaintiffs' Sherman Act and New York State Donnelly Act claims.[6]

■ After reviewing all the papers submitted, I grant defendants' motion for summary judgment and dismiss plaintiff's antitrust claims. ADI lacks standing to bring these claims because it has not suffered the requisite antitrust injury. The only injury that ADI has asserted is injury to itself as a result of MANY's termination of the contract and the migration of a

---

**6.** A Donnelly Act claim generally is construed in accordance with the Sherman Act. Therefore, the analysis discussed below applies equally to plaintiff's state and federal antitrust claims. *See Anheuser–Busch, Inc. v. Abrams*, 71 N.Y.2d 327, 335, 525 N.Y.S.2d 816, 520 N.E.2d 535 (1988).

handful of ADI's officers and agents to MANY after the contract was terminated. This is not the type of injury that the antitrust laws were meant to prevent, nor is it the kind of injury that is actionable under the Clayton Act.

■ First, the termination of one distributor of a product for another in a given market is not, standing alone, a violation of the antitrust laws. *See The Serpa Corp. v. McWane, Inc.*, 199 F.3d 6 (1st Cir.1999); *Crown Beverage Co., Inc. v. Cerveceria Moctezuma, S.A.*, 663 F.2d 886 (9th Cir. 1981) (distributor failed to present evidence that its replacement by another distributor violated the Sherman Act); *Cancall PCS v. Omnipoint Corp.*, No. 99 Civ. 3395, 2000 WL 272309, *8 (S.D.N.Y. Mar. 10, 2000); *Hsing Chow v. Union Cent. Life Ins. Co.*, 457 F.Supp. 1303 (E.D.N.Y.1978). This is true even where a company chooses to replace a distributor by vertically integrating distribution of its product through an in-house sales department, as MANY did here. Absent some anticompetitive effect, vertical integration does not violate antitrust laws. *See Theatre Party Assocs., Inc. v. Shubert Org., Inc.*, 695 F.Supp. 150, 155 (S.D.N.Y.1988) ("Because a manufacturer or seller is free to control the distribution of its own product, it can unilaterally terminate or replace independent distributors and vertically integrate without violating the antitrust laws. Vertical integration without more, even by a monopolist, does not offend Section 2.") (citing *Belfiore v. New York Times Co.*, 826 F.2d 177 (2d Cir.1987)). Plaintiff's allegation that defendants have a large market share does not change this analysis. *Id.* ("It is well settled that a manufacturer's monopoly over the distribution of its own product cannot form the basis of a valid monopolization claim.").

■ Plaintiff conceded at oral argument that replacement of one distributor for another or by utilization of an in-house sales force is not an antitrust violation. Plaintiff claims, however, that this case is different and that it has shown sufficient antitrust injury because defendants committed various business torts (i.e. unfair competition, improper use of the Blue Cross and Blue Shield logo, predatory hiring of ADI's officers/agents) that resulted in a reduction of plaintiff's sales of competing LTCI, thereby reducing overall competition in the LTCI market. This theory is flawed. Not every business tort or breach of contract that has an adverse impact on a competitor can form the basis of an antitrust claim. *See Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 226, 113 S.Ct. 2578, 125 L.Ed.2d 168 (1993) ("Even an act of pure malice by one business competitor against another does not, without more, state a claim under the federal antitrust laws; those laws do not create a federal law of unfair competition ...."); *Kaplan v. Burroughs Corp.*, 611 F.2d 286, 291 (9th Cir.1979) ("It is the impact upon competitive conditions in a definable product market which distinguishes the antitrust violation from the ordinary business tort.").

Further, plaintiff seems to equate anticompetitive conduct with antitrust injury. The injury required for antitrust standing is one that *flows from* the unlawful (anticompetitive) nature of the defendants' acts. *See* Clayton Act, 15 U.S.C. § 15(a) (granting private right of action to anyone who has been injured "*by reason of* anything forbidden in the antitrust laws ...."). Plaintiff asserts here that its injury (a reduction in its sales and profits) as a result of the termination of the contract and its agents leaving to work for MANY has resulted in reduced sales of competing LTCI and, therefore, less competition in the overall market. Plaintiff has it backwards. The defendants' anticompetitive

conduct must cause plaintiff's injury, not the other way around. That is, plaintiff's injury cannot cause the anticompetitive conduct, which is precisely what plaintiff here alleges. *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977) ("Plaintiffs must prove antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful. The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation.").

In addition, plaintiff improperly equates decreased *sales* of LTCI with decreased *competition* in the overall LTCI market. However, the latter does not necessarily follow the former. If it did, any conduct by a competitor that caused another to go out of business (or as ADI alleges here, any conduct that results in reduced sales of a competing product), would be an antitrust violation. That is not the law. The "antitrust injury requirement underscores the fundamental tenet that '[t]he antitrust laws ... were enacted for the protection of *competition,* not *competitors.*'" *Balaklaw*, 14 F.3d at 797 (emphasis in original) (quoting *Brunswick*, 429 U.S. at 488, 97 S.Ct. 690).

What is clear from the record is that plaintiff's alleged injury is the result of it losing a lucrative contract with MANY. The cancellation of that contract, which is entirely proper, eliminated a lucrative business arrangement. It is evident that MANY's cancellation of the contract was prompted in large part because one of MANY's competitors in the LTCI business purchased ADI. By continuing the former arrangement, MANY would be directly benefitting its competitor.

Plaintiff's alleged drop in sales and lost profits, however, are not the result of any anticompetitive conduct of defendants. Rather, they are the result of the lawful termination of an agency contract. That lawful act, even when considered in light of ADI's claim that MANY engaged in "predatory hiring" of ADI officers and agents, cannot serve as the basis for an antitrust claim. All ADI has shown is that it has been harmed as an individual competitor in the market by MANY. That is not enough to confer standing under the Clayton Act. *See Brunswick*, 429 U.S. at 488, 97 S.Ct. 690; *The Serpa Corp.*, 199 F.3d at 12; *Balaklaw*, 14 F.3d at 797–98.

■ Finally, even assuming that ADI could raise a question of fact regarding whether it suffered a sufficient antitrust injury, each of ADI's antitrust claims fail for other reasons. Plaintiff's Sherman Act § 1 conspiracy-in-restraint-of-trade claim fails because plaintiff has not met its " 'initial burden of showing that the challenged action has had an *actual* adverse effect on competition as a whole in the relevant market ....'" *K.M.B. Warehouse Distrib, Inc. v. Walker Mfg. Co.*, 61 F.3d 123, 127 (2d Cir.1995) (emphasis in original) (quoting *Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs.*, 996 F.2d 537, 543 (2d Cir.1993)); *see also Virgin Atl. Airways*, 257 F.3d at 264 ("The fact that the defendant's actions prevent a plaintiff from competing in a market is not enough, standing alone, to satisfy this initial burden of proof."); *Capital Imaging Assocs.*, 996 F.2d at 546 (plaintiff bears the burden of showing that defendants' conduct had "a substantially harmful effect on competition.").

Here, however, plaintiff has made no such showing. Plaintiff has produced no evidence that competition between companies who sell LTCI has been reduced, or that MANY has utilized its market power to set unreasonably high prices for LTCI. In fact, when MANY terminated the con-

tract, ADI was free to sell Penn Treaty (and presumably any other) LTCI policies without restriction, thereby *increasing* competition in the market. Further, there is absolutely no evidence that other insurance products have become less available to consumers in the Rochester Region or that other competitors have been pushed out of the market.

According to information provided by plaintiff from the New York State insurance department, twenty-seven companies were offering individual LTCI policies in New York State in 2003. (Dkt. # 24, Patterson Aff., Ec. B). From the consumers' perspective then, the LTCI market has not changed. *Balaklaw*, 14 F.3d at 798. That ADI allegedly has experienced difficulty competing with MANY does not translate into a reduction in competition in the LTCI market overall. *K.M.B. Warehouse Distrib.*, 61 F.3d at 127. Importantly, plaintiff does not allege that defendants have restrained plaintiff's ability to sell LTCI of other carriers. There is also uncontroverted evidence in the record that MANY's sales actually *declined* after the contract was terminated, thereby leaving the market open for further competition from ADI and others. *See Balaklaw*, 14 F.3d at 799.

■ Plaintiff's Sherman Act § 2 monopolization claims fail because plaintiff has not shown that it suffered any direct injury based on MANY's alleged market power. Even assuming that plaintiff could prove that MANY has a sixty to seventy percent market share of the individual LTCI market, that fact did not cause any direct antitrust injury to plaintiff. MANY's market share may or may not have an actual adverse effect on other insurance companies who compete in the LTCI market in the Rochester Region. However, plaintiff is not an insurance company. Instead, it *sells* insurance policies

underwritten by insurance companies. Therefore, the fact that MANY may have a large market share of the current policy holders of LTCI cannot be the basis for a monopolization claim by this plaintiff.

Whatever business injury plaintiff suffered as a result of the termination of the contract is attributable only to the fact that plaintiff is no longer the agent authorized to sell MANY's products. To the extent plaintiff suffered damage because MANY's competitors find it hard to compete with MANY, that injury is too remote to be compensable under the antitrust laws. *See G.K.A. Beverage Corp. v. Honickman*, 55 F.3d 762, 767 (2d Cir.1995) (distributors of soft drinks did not have antitrust standing to bring monopolization claim against bottling companies based on bottling companies' alleged monopolization of soft drink market; although the monopoly drove out of business a bottling company with whom distributors had exclusive distribution contract, distributors' injuries were too remote from antitrust violation to have standing under the Clayton Act); *The Serpa Corp.*, 199 F.3d at 11–13 (former exclusive sales representative of plumbing supplies lacked standing to sue plumbing supplies manufacturer that had acquired eighty-five percent market power because only a competitor or consumer in the plumbing supplies market had standing under the Clayton Act for alleged monopoly; as a distributor of those products, plaintiff was only "incidentally connected to the alleged antitrust violation" and its injury "too remote.").

### III. Lanham Act—15 U.S.C. § 1125(a).

■ Plaintiff seeks to amend the second amended complaint to add a claim for false advertising under the Lanham Act, 15 U.S.C. § 1125(a). That motion is denied. Although leave to amend should be granted freely, it is not an abuse of discre-

tion to deny leave where any such amendment would be futile. *Health–Chem Corp. v. Baker,* 915 F.2d 805, 810 (2d Cir.1990) ("where . . . there is no merit in the proposed amendments, leave to amend should be denied").

An amendment is considered futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6). *Dougherty v. Town of North Hempstead Bd. of Zoning Appeals,* 282 F.3d 83, 88 (2d Cir.2002). In determining whether to allow the amendment to add a Lanham Act claim here, I consider both the factual allegations contained in the proposed claim as well as the exhibits plaintiff has attached to the proposed second amended complaint, including the annual reports that allegedly contain the misleading statements. (Dkt. # 24, Patterson Aff., Exs. I and K). *See Gregory v. Daly,* 243 F.3d 687, 691 (2d Cir.2001) (When determining the sufficiency of a claim under Rule 12(b)(6), the Court can consider the factual allegations in the amended pleading and "those contained in documents attached to the pleadings or in documents incorporated by reference.").

Here, plaintiff's proposed Lanham Act claim is futile. Plaintiff's complaint centers around his belief that by touting its relationship with Excellus (Blue Cross and Blue Shield), consumers may be led to conclude that MANY is a not-for-profit corporation, when it is in fact a for-profit corporation. I fail to see why consumers would be concerned with that distinction but, in any event, the pleadings here do not demonstrate any deception worthy of Lanham Act protection. It is important to note that plaintiff does not contend that defendants' statements concerning MANY's relationship to its Excellus parent are false.

Here, plaintiff's theory is that by not disclosing that MANY is a for-profit company on its website and in its annual report, while at the same time referencing its corporate relationship with its not-for-profit Excellus parent, consumers are misled. Plaintiff's proposed claim must fail because it cannot base a Lanham Act claim on the defendants' failure to disclose a fact. *See Avon Products, Inc. v. S.C. Johnson & Son, Inc.,* 984 F.Supp. 768, 798 (S.D.N.Y.1997) ("Avon cannot be held liable under the Lanham Act for failing to state publicly that SSS is not an effective insect repellent."); *Int'l Paint Co. v. Grow Group, Inc.,* 648 F.Supp. 729, 730 (S.D.N.Y.1986) (The Lanham Act "imposes no affirmative duty of disclosure."). Plaintiff points to no affirmative statement by defendants that it is a not-for-profit company. Further, plaintiff cannot rely on the speculative claim that LTCI consumers may misinterpret literally true statements on defendants' websites and in their annual reports. *See Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1138–39 (4th Cir.1993) (granting 12(b)(6) motion to dismiss Lanham Act claim where plaintiff relied on an alleged false implication created in a drug manufacturer's advertising that its product had been approved by the FDA because plaintiff failed to point to any affirmative misrepresentation of fact in that advertising in which defendant declared that its product was granted FDA approval). Therefore, plaintiff's motion to amend to add a Lanham Act claim is denied as futile.

## IV. State Law Claims

Plaintiff also asserts a number of claims based on New York law, including breach of contract, fraud, unjust enrichment, and unfair competition. Having granted summary judgment against plaintiff on its federal claims, I decline to exercise pendent jurisdiction over plaintiff's state law claims, and they are dismissed. *See Valencia ex rel. Franco v. Lee,* 316 F.3d 299,

305 (2d Cir.2003) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness, and comity-will point toward declining to exercise jurisdiction over the remaining state-law claims"); *Town of West Hartford v. Operation Rescue*, 915 F.2d 92, 104 (2d Cir.1990) ("it is well settled that 'if the federal claims are dismissed before trial ... the state claims should be dismissed as well' ") (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)); *see also* 28 U.S.C. § 1367(c)(3).

## V. Rule 56(f) Affidavit of Plaintiff's Attorney

 Plaintiff argues that the Court should deny defendants' motion for summary judgment at this time because no discovery has taken place. Plaintiff's attorney filed an affidavit pursuant to Fed. R.Civ.P. 56(f).[7] The Second Circuit has established a four-part test for an affidavit filed pursuant to Rule 56(f). The affidavit must describe what discovery still needs to be completed, how the facts sought reasonably can be expected to create a genuine issue of material fact, the parties' efforts to obtain that discovery to date, and why those efforts were unsuccessful. *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir.1994) (citing *Hudson River Sloop Clearwater, Inc. v. Dep't of Navy*, 891 F.2d 414, 422 (2d Cir.1989)). However, "Rule 56(f) is not a shield against all summary judgment motions. Litigants seeking relief under the Rule must show that the material sought is germane to the

defense, and that it is neither cumulative nor speculative." *Sundsvallsbanken v. Fondmetal, Inc.*, 624 F.Supp. 811, 815 (S.D.N.Y.1985); *see also Powers v. McGuigan*, 769 F.2d 72, 76 (2d Cir.1985) ("where the discovery sought would not meet the issue that the moving party contends contains no genuine issue of fact, it is not an abuse of discretion to decide the motion for summary judgment without granting discovery.").

Here, plaintiff's attorney states that plaintiff needs discovery on nearly every aspect of its case. Dkt. # 38, ¶ 3. However, plaintiff's attorney fails to address how this discovery would raise a material issue of fact to withstand summary judgment on the antitrust claims. Defendants have been granted summary judgment on plaintiff's antitrust claims because plaintiff cannot show, based on the facts alleged, that it has suffered the requisite antitrust injury. Discovery would not raise a material issue of fact on ADI's claims.

 Where a request for discovery is based on speculation as to what might be discovered, the court should deny the request, even if properly and timely made. *Paddington Partners*, 34 F.3d at 1138; *Gray v. Town of Darien*, 927 F.2d 69, 74 (2d Cir.1991) ("In a summary judgment context, an 'opposing party's mere hope that further evidence may develop prior to trial is an insufficient basis upon which to justify the denial of [a summary judgment] motion' ") (quoting *Contemporary Mission, Inc. v. U.S. Postal Serv.*, 648 F.2d 97, 107 (2d Cir.1981)); *Capital Imaging Assocs. v. Mohawk Valley Med. Assocs.*, 725 F.Supp. 669, 680 (N.D.N.Y.1989) (citing

7. Fed.R.Civ.P. 56(f) provides:
(f) When Affidavits are Unavailable. Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

*Waldron v. Cities Serv. Co.*, 361 F.2d 671, 673 (2d Cir.1966) (citations omitted) (while "Rule 56(f) discovery is specifically designed to enable a plaintiff to fill material evidentiary gaps in its case ... it does not permit a plaintiff to engage in a 'fishing expedition'"), *aff'd* 996 F.2d 537 (2d Cir. 1993)). Here, plaintiff's broad request to conduct discovery is based solely on the hope that it can develop facts essential to support almost all of the assertions in its second amended complaint. This is not the purpose of Rule 56(f), and plaintiff's conclusory discovery request is not sufficient to withstand summary judgment.

## VI. Motion to Amend to Add MedAmerica, Inc. as a Defendant

Plaintiff also seeks to add MedAmerica, Inc. as a defendant in this case. In light of the Court's dismissal of all of plaintiff's claims, this motion is denied as moot.

## VII. Defendants' Motion for Rule 11 Sanctions

Defendants have moved pursuant to Fed.R.Civ.P. 11 for sanctions against plaintiffs and their counsel for attorneys' fees and expenses incurred in defending this lawsuit. (Dkt. # 29). That motion is denied. The decision to levy sanctions against an attorney or a litigant rests in the sound discretion of the Court. *See Corroon v. Reeve*, 258 F.3d 86, 92 (2d Cir.2001); *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 78 (2d Cir.2000). Under Rule 11, a Court may impose sanctions where "it is clear under existing precedents that a pleading has no chance of success and there is no reasonable argument to extend, modify, or reverse the law as it stands." *Corroon*, 258 F.3d at 92.

Despite the fact that I have granted summary judgment and dismissed plaintiff's claims, I cannot say that the amended complaint had no chance of success. Al-

though plaintiff's counsel advanced certain tenuous legal arguments and theories in support of the claims asserted, I cannot say that the amended complaint was so deficient nor counsel's conduct so egregious or objectively unreasonable as to require sanctions. *See K.M.B. Warehouse Distribs.*, 61 F.3d at 131 (quoting *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir.1993)) ("Sanctions should only be imposed if 'it is patently clear that a claim has absolutely no chance of success,' and all doubts should be resolved in favor of the signing attorney.").

## CONCLUSION

Plaintiffs' first motion for leave to file an amended complaint (Dkt. # 36) is deemed withdrawn. Plaintiffs' second motion to amend the amended complaint (Dkt. # 43) is granted in part and denied in part, as follows:

- Plaintiffs' motion to amend the first, second, and third claims based on the Sherman Act and the Donnelly Act is granted, and the Court considers defendants' motion for summary judgment as against these amended claims;
- Plaintiffs' motion to amend the fourth, fifth, sixth, seventh, eighth and ninth claims based on state law is denied as moot.

Plaintiffs' motion for miscellaneous relief (Dkt. # 51) that pertains to a claim for punitive damages is denied as moot.

Plaintiffs' third motion to amend the complaint (Dkt. # 53) to add claims under the Lanham Act and New York's General Business Law § 349 is denied.

Defendants' motion for summary judgment (Dkt. # 24) is granted and plaintiffs' first, second, and third amended claims based on the Sherman Act and the Donnelly Act are dismissed with prejudice. The Court declines to exercise supplemental

jurisdiction over plaintiffs' fourth, fifth, sixth, seventh, eighth, and ninth state law claims and those claims are dismissed.

Defendants' motion for sanctions (Dkt. # 29) is denied.

IT IS SO ORDERED.