In re **ALLEGHENY HEALTH, EDUCATION AND RESEARCH FOUNDATION, Allegheny University of the Health Sciences, Allegheny University Medical Practices, Allegheny Hospitals, Centennial and Allegheny University Hospitals–East, Debtors.**

**William J. Scharffenberger, As Chapter 11 Trustee of Allegheny Health, Education and Research Foundation, Movant,**

v.

**Michelle Kirkland, Respondent.**

**Nos. 98–25773–MBM to 98–25777–MBM.**

United States Bankruptcy Court, W.D. Pennsylvania.

March 11, 2005.

778

David I. Swan, McGuire Woods, L.L.P., Pittsburgh, PA, for trustee.

Robert T. Vance, Jr., Law Offices of Robert T. Vance, Jr., Philadelphia, PA, for Michelle Kirkland.

## MEMORANDUM OPINION

M. BRUCE MCCULLOUGH, Chief Judge.

 Michelle Kirkland, the instant respondent (hereafter "Kirkland"), has filed two proofs of claim in the instant bankruptcy case, each for an identical amount of $8,341,200.00. The Chapter 11 Trustee for the above-captioned debtors (hereafter "the Trustee") objects to both proofs of claim and requests that each be disallowed in its entirety. For the reasons set forth below, the Court sustains the Trustee's objection to Kirkland's proofs of claim and, therefore, disallows such proofs of claim in their entirety. On a procedural note, the Court sustains the Trustee's objection to Kirkland's proofs of claim by granting in full the Trustee's summary judgment motion dated October 12, 2004.[1] At the same

time, the Court denies with prejudice the motion for partial summary judgment brought by Kirkland, which motion is dated October 8, 2004.[2]

### STATEMENT OF FACTS

As Kirkland's various pleadings and briefs filed in the instant claims objection make clear, both of the proofs of claim that she has filed in the instant bankruptcy case pertain to the same claims, namely her claims against MCP–Hahnemann School of Medicine (hereafter "MCP"), which entity comprised part of one of the above-captioned debtors when such claims accrued. Kirkland was a student at MCP from August 1996 until July 1998, at which time she was dismissed from MCP because of her substandard academic performance. Kirkland claims that at all times while she was a student at MCP she suffered from a learning disability, namely attention deficit disorder (hereafter "ADD"). Kirkland attributes her substandard academic performance entirely to an alleged failure by MCP to accommodate her alleged learning disorder. Therefore, Kirkland contends ultimately that MCP dismissed her because MCP, in turn, failed to accommodate her alleged learning disability. Because of such alleged failure to accommodate by MCP, as well as MCP's dismissal of Kirkland caused, as Kirkland argues, by such alleged failure to accommodate, Kirkland claims that, with respect to herself, MCP (a) violated the Americans with Disabilities

---

1. An objection to claim, if not joined with a demand for other relief, constitutes a contested matter that is governed by Fed.R.Bankr.P. 9014. *See* Fed.R.Bankr.P. 3007, 11 U.S.C.A. (West 2004), advisory committee's note. The instant objection to claim by the Trustee constitutes a contested matter. Pursuant to Fed. R.Bankr.P. 9014(c), a motion for summary judgment via Fed.R.Bankr.P. 7056 and Fed. R.Civ.P. 56 may be brought within a contested matter. *See* Fed.R.Bankr.P. 9014(c), 11 U.S.C.A. (West 2004). Therefore, an objec-

tion to claim generally, and the instant objection to claim in particular, may be disposed of via summary judgment.

2. The Court has subject matter jurisdiction over the Trustee's objection to Kirkland's claims pursuant to 28 U.S.C. § 1334(b), and such claims objection is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) given that Kirkland's claims do not constitute unliquidated personal injury tort claims.

Act of 1990 ("ADA"), (b) violated § 504 of the Rehabilitation Act of 1973 (the "Rehabilitation Act"), and (c) breached an implied contract between MCP and Kirkland.

Prior to filing the aforesaid proofs of claim in the instant bankruptcy case, Kirkland pursued her claims against MCP via a three-count action in the United States District Court for the Eastern District of Pennsylvania. The District Court ultimately dismissed such action on the basis that (a) Kirkland's claims against MCP were pre-petition claims against one of the above-captioned debtors, and (b) such action was consequently brought in violation of the automatic stay. Such dismissal decision by the District Court was subsequently affirmed by the U.S. Court of Appeals for the Third Circuit. Such decisions by the District Court and the Third Circuit Court of Appeals necessitated Kirkland's filing of the aforesaid proofs of claim.

■ In Kirkland's three-count complaint that commenced the ultimately-dismissed action in the District Court (hereafter "Kirkland's District Court Complaint"), Kirkland sought as relief from MCP "compensatory and punitive damages, reinstatement at MCP, front pay, reasonable attorney's fees, costs, disbursements, [and] expert witness fees." Kirkland now seeks via her claims against MCP, as set forth in the aforesaid proofs of claim and her Motion to Compel Payment of Administrative Expense, $8,341,200.00 in damages, which damages are itemized as follows: (a) Lost salary as a physician—$7,970,200; (b) Maximum claim under the ADA for compensatory and punitive damages—$300,000; (c) Legal fees—$11,000; (d) Student Loans—$60,000. The Court notes that, notwithstanding the District Court and Third Circuit decisions that Kirkland's claims against MCP accrued pre-petition, Kirkland still appears to contend that her claims constitute administrative expenses. The Court also observes that, the relief request in Kirkland's District Court Complaint for reinstatement at MCP notwithstanding, Kirkland has not sought or pursued such reinstatement at any time during the administration of the instant bankruptcy case, via either her aforesaid proofs of claim or otherwise. Because Kirkland has not, in any manner, pursued such reinstatement in this Court to date, and since the claims bar date in the instant bankruptcy case has long since passed, and given that Kirkland may not now amend her proofs of claim as they presently exist so as to seek a remedy for which notice cannot conceivably be viewed as having thus far been given, the Court not only concludes that she no longer wishes to seek such reinstatement but also holds that she is legally barred from henceforth pursuing the same.

Upon motion by the Trustee, and so as to aid the Trustee in his effort to confirm a Chapter 11 plan in the instant bankruptcy case, the Court, by an order dated December 11, 2000, directed the Trustee to establish a claims reserve regarding Kirkland's claims "in the amount of $1 Million on a general unsecured basis, or the amount of $50,000," which $50,000 figure was arrived at by multiplying $1 million by .05, or the tentative pro rata distribution rate as of December 11, 2000.

Prior to filing his summary judgment motion dated October 12, 2004 (hereafter "the Trustee's Present Summary Judgment Motion"), the Trustee filed another motion for partial summary judgment whereby he seeks to limit the scope of damages which Kirkland could recover via her claims, which motion has thus far been tabled by the Court (hereafter "the Damages Summary Judgment Motion"). Be-

cause the Court presently grants the Trustee's Present Summary Judgment Motion wherein full summary judgment is sought, the Damages Summary Judgment Motion is thereby rendered moot. However, because the Court finds that several items contained within the Damages Summary Judgment Motion and Kirkland's brief in opposition thereto (brief dated May 29, 2004) are relevant to the Court's disposition of the Trustee's Present Summary Judgment Motion, the Court shall make mention of them. In particular, the Trustee, within the Damages Summary Judgment Motion, takes the position that (a) Kirkland, to the extent that she can recover monetarily under the ADA, is limited to a statutory cap of $300,000 for compensatory and punitive damages, (b) punitive damages are not recoverable under the Rehabilitation Act, and (c) Kirkland may not recover front pay damages as she was never an employee of MCP. Kirkland stipulates, in response to the Damages Summary Judgment Motion, that (a) monetary damages under the ADA are statutorily capped at $300,000, (b) she may not recover punitive damages under the Rehabilitation Act, (c) she does not pursue punitive damages with respect to her breach of contract claim, (d) she was never an employee of MCP, and (e) she cannot obtain front pay damages since she was never an employee of MCP. *See* May 29, 2004 Kirkland Opp'n Br., at p. 4.[3]

Kirkland, as set forth above, claims that she suffered from ADD, a learning disability, at all times while she was a student at MCP. Kirkland appears to have been evaluated on three separate occasions by psychologists to determine whether, and to what extent, she suffered from either a learning disability or, in particular, ADD. The first such evaluation was conducted by the Psychological Clinic at Rutgers University (hereafter "the Rutgers Clinic") in May and June of 1996. The Rutgers Clinic, in a report dated June 29, 1996, regarding their evaluation of Kirkland (hereafter "the Rutgers Report"), concluded, *inter alia*, that (a) "[a]lthough ... [Kirkland] has some indicators that are consistent with Attention Deficit Disorder, her symptoms are not severe enough to warrant an ADD diagnosis at this time," *see* Tr. Mot. Summ. J. Ex. F & Kirkland Mot. Part. Summ. J. Ex. C (Rutgers Report, last page), and (b) "[n]o learning disability was found," *see Id.* (Rutgers Report, last page). Furthermore, the Rutgers Report indicates that Kirkland's various learning-related abilities graded out at between low average and superior when compared to other adults her age, *see Id.* (Rutgers Report, 2nd and 3rd pages); significantly, the Rutgers Report does not even indicate that, when comparing Kirkland to other *college level* adults, her various learning-related abilities graded out at below average, *see Id.* Finally, the Rutgers Clinic, although it concluded that Kirkland might

**3.** The Trustee also argues, in the Damages Summary Judgment Motion, that Kirkland (a) has waived her Rehabilitation Act claim on the basis that the same was not properly identified in her proofs of claim, and (b) may not recover damages for lost future earnings as a physician—which damages item constitutes, by far, the largest amount that Kirkland seeks in the way of relief—because such relief is predicated upon nothing more than speculation and conjecture. The Court rejects the Trustee's waiver argument vis-a-vis Kirkland's Rehabilitation Act claim because notice of such claim is provided, at a minimum, in the supporting documentation attached to Kirkland's proofs of claim and her Motion to Compel Payment of Administrative Expense—i.e., Kirkland's District Court Complaint. The Court finds that it need not, and thus will not, address the level of speculation that surrounds—and the impact of such speculation upon—Kirkland's damages request for lost future earnings.

be challenged by, or have difficulty with, high level academic work such as medical school, did not expressly find that anything operated to "substantially limit" her ability to learn when she was compared to either the general population or some segment thereof. *See Id.*[4]

The second such evaluation of Kirkland was performed by PsychoEducational Associates in July 1996. PsychoEducational Associates, in an undated report regarding their July 1996 evaluation of Kirkland (hereafter "the 1996 PsychoEducational Report"), found, *inter alia*, that evidence exists that "suggest[s]" that Kirkland has "attention problems" and "attention difficulties." *See* Tr. Mot. Summ. J. Ex. I & Kirkland Mot. Part. Summ. J. Ex. D (1996 PsychoEducational Report, pg. 2). Such finding notwithstanding, however, the 1996 PsychoEducational Report does not indicate that, as of July 1996, Kirkland suffered from either a learning disability or, in particular, ADD. *See Id.* Furthermore, for the only learning-related ability for which Kirkland was tested by PsychoEducational Associates and then compared to others in 1996, that is "Overall Processing Speed" for which she was compared to the general population, PsychoEducational Associates concluded that Kirkland graded out at average, *see Id.* (1996 PsychoEducational Report, pg. 1); the 1996 PsychoEdu-

cational Report is noticeably devoid of any indication that Kirkland would have graded out at below average if (a) the balance of her learning-related abilities had been compared to those of the general population, or (b) any of her learning-related abilities had even been compared with those of other college level adults. *See Id.* Finally, noticeably absent from the 1996 PsychoEducational Report is an express conclusion to the effect that the attention problems or difficulties that Kirkland might then have been experiencing operated to "substantially limit" her ability to learn, either when compared to the general population or, for that matter, any segment thereof. *See Id.*[5]

The third and final evaluation of Kirkland was performed on April 20, 1998, and such evaluation was also performed by PsychoEducational Associates. PsychoEducational Associates, in a June 30, 1998 letter to MCP that was accompanied by an undated report regarding their April 20, 1998 evaluation of Kirkland (hereafter "the 1998 PsychoEducational Report"), found, *inter alia*, that "Kirkland meets the criteria for the diagnosis of Attention Deficit Hyperactivity Disorder," *see* Kirkland Mot. Part. Summ. J. Ex. F (June 30, 1998 letter);[6] in such report, PsychoEducational Associates also states that it found, in July of 1996, that Kirkland suf-

---

4. The Court holds that it may make the above findings regarding the contents of the Rutgers Report at the summary judgment stage even if Kirkland perhaps takes issue with the same because the Court concludes, in turn, that a reasonable jury/factfinder could only find as does the Court—put differently, the Court concludes that a genuine dispute does not exist regarding such findings by the Court, *see infra* pp. 789–90 for a discussion regarding the genuineness of factual disputes.

5. The Court holds that it may make the above findings regarding the contents of the 1996 PsychoEducational Report at the summary

judgment stage even if Kirkland perhaps takes issue with the same because the Court concludes, in turn, that a reasonable jury/factfinder could only find as does the Court—put differently, the Court concludes that a genuine dispute does not exist regarding such findings by the Court, *see infra* pp. 789–90 for a discussion regarding the genuineness of factual disputes.

6. The Court will presume, at least for the purpose of the two summary judgment motions that are presently under consideration, that Attention Deficit Hyperactivity Disorder is the same disorder as ADD.

fered from such disorder, *see* Tr. Mot. Summ. J. Ex. I & Kirkland Mot. Part. Summ. J. Ex. F (1998 PsychoEducational Report, pg. 1), its failure to conclude as much in the 1996 PsychoEducational Report notwithstanding. Although PsychoEducational Associates diagnosed Kirkland with ADD, PsychoEducational Associates, in its 1998 report, nevertheless graded all of·Kirkland's various learning-related abilities at between low average and superior when compared to other adults her age, *see Id.* (1998 PsychoEducational Report, pp. 3–5); furthermore, the 1998 PsychoEducational Report is, as was the case with respect to the 1996 PsychoEducational Report, noticeably devoid of any indication that Kirkland would have even graded out at below average if any of her learning-related abilities had been compared to those of other college level adults, *see Id.* Finally, PsychoEducational Associates failed to expressly conclude in its 1998 report that the ADD which Kirkland suffered from operated to "substantially limit" her ability to learn, either when compared to the general population or, for that matter, any segment thereof. *See Id.*[7]

While Kirkland was a student at MCP, MCP, as set forth in its 1996–97 Student Handbook, had the following internal policy regarding learning disabled students who matriculated at MCP (hereafter "MCP's Learning Disability Policy"):

**Learning Disability Policy**

A student with a documented learning disability will be given extra time to take exams in both the basic science and clinical years. A department may decide to examine a student with an oral

exam or evaluate their competency in other ways. These special testing procedures will be decided on an individual basis by the individual departments. Documentation of a learning disability will be performed by, or previous documentation evaluated by, the Office of Student Affairs or consultants approved by the University. Such documentation is maintained confidentially separate from the student's academic record. Course directors may confirm the need for requested special accommodations with the Office of Student Affairs.

*See* Kirkland Mot. Part. Summ. J. Ex. A. At the same time, MCP, as set forth in its 1996–97 Student Handbook, also had the following internal policy regarding special testing procedures for its students (hereafter "MCP's Special Testing Procedures Policy"):

**Special Testing Procedures**

Students who request special testing procedures must document the need for these procedures. Documentation will be performed by the Office of Student Affairs or consultants approved by the University. The decision to provide specialized testing procedures will be made on an individual basis by the appropriate evaluation subcommittee.

*See Id.*

The parties agree that Kirkland told an appropriate official with MCP at some point during her first term there, that is at some point during the fall semester of 1996, that she suffered from the learning disability of ADD. The parties also agree that Kirkland provided such official at that

---

**7.** The Court holds that it may make the above findings regarding the contents of the 1998 PsychoEducational Report at the summary judgment stage even if Kirkland perhaps takes issue with the same because the Court concludes, in turn, that a reasonable jury/factfinder could only find as does the Court—put differently, the Court concludes that a genuine dispute does not exist regarding such findings by the Court, *see infra* pp. 789–90 for a discussion regarding the genuineness of factual disputes.

time with a copy of the Rutgers Report. Kirkland takes the position that she also provided such official at that time with a copy of the 1996 PsychoEducational Report; MCP apparently contends that it was never provided a copy of this particular document by Kirkland while she was enrolled as a student at MCP. For purposes of the parties' instant summary judgment motions, the Court shall find that Kirkland provided MCP with copies of both such reports.

The parties agree that MCP allowed Kirkland extended time—that is, extra time when compared to other MCP students—to take all of her first-year course examinations, and that MCP administered such exams to Kirkland in a quiet room, separate from the regular classroom, so as to minimize noise and distraction. The parties also agree that MCP placed Kirkland on an extended curriculum after she failed several courses during the fall semester of 1996 so as to increase her chances for successfully completing her studies at MCP. The parties are in agreement that MCP provided Kirkland with tutorial assistance from other medical students at MCP, but that Kirkland instead desired to receive tutorial assistance from MCP faculty members. Kirkland apparently also requested other learning accommodations unrelated to the taking of exams, such as computer-aided instruction, computer programs, video-taped lectures, and visual learning devices.

Kirkland contends that, because MCP's Learning Disability Policy operated to provide additional test-taking time to MCP students with documented learning disabilities, and since MCP allowed her extended time to take all of her first-year course examinations after she provided MCP with copies of the Rutgers Report and the 1996 PsychoEducational Report, MCP, from the time that it received such reports, necessarily must have regarded her as having the learning disability of ADD. Kirkland also maintains that a March 26, 1998 letter to her written by Dr. Stephen Risen, Associate Dean for Student Affairs at MCP (hereafter "the Risen Letter"), necessarily establishes that MCP regarded her as having ADD while she attended MCP.[8]

8. The portion of the Risen Letter that Kirkland asserts reaffirms that MCP regarded her as having ADD while she attended MCP follows:

> You entered medical school in August 1996 and submitted a brief report to Pat Burton, Director of Student Assessment and Enrichment Services, from a psychologist indicating that you had Attention Deficit Disorder. Ms. Burton requested further documentation in order to determine what reasonable accommodations were required, but you declined to submit the documentation. After Ms. Burton consulted with me, she and I, as Associate Dean for Student Affairs, decided to grant you extended testing time based on the documentation that you had submitted.

> . . . . .

> The only documentation you have presented to the school of Medicine regarding your ability to perform as a medical student was submitted in August 1996. As described above in this letter, the School of Medicine immediately responded by granting you extended testing time. However, you had been informed by Ms. Burton in the Fall of 1997 that the brief report you had submitted in the Fall of 1996 would not meet the requirements for extended testing time by the National Board of Medical Examiners for USMLE Step I. Ms. Burton gave you the name of a psychologist in order to undergo testing to have the proper documentation both for the medical school and the National Board of Medical Examiners. The School of Medicine never received any further documentation of a Learning Disability or requests for accommodation. Therefore, the School of Medicine did not have any recommendations from a Learning Disability specialist as to what reasonable accommodations should be provided to you.

> *See* Kirkland Mot. Part. Summ. J. Ex. B.

Despite—or, as Kirkland argues, because of MCP's failure to offer more than—the learning accommodations that MCP offered to her, Kirkland failed to remediate, that is she failed to pass upon retaking, several of her first-year courses that she had failed in the fall semester of 1996. Kirkland also failed two additional courses that she took during the spring semester of 1998. As a result of her substandard academic performance, Kirkland was ultimately dismissed from MCP in July 1998.

## DISCUSSION

### I. *Summary Judgment Standard.*

The law regarding summary judgment adjudication is succinctly set forth as follows:

> On a summary judgment motion, the movant must show that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). Once the movant satisfies this initial burden, then the non-movant must respond with information to the contrary or it will lose. Fed. R.Civ.P. 56(e).
>
> ... Where the movant is the defendant, or the party without the burden on the underlying claim, the movant has no obligation to produce evidence negating its opponent's case.

*National State Bank v. Federal Reserve Bank,* 979 F.2d 1579, 1581–1582 (3rd Cir. 1992) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 ([U.S.] 1986)). "If the nonmoving party has the burden of persuasion at trial, [then] 'the party moving for summary judgment may meet its burden [of showing that it is entitled to a judgment as a matter of law] by showing that the evidentiary materials of record, if

reduced to admissible evidence, would be insufficient to carry the nonmovant's burden of proof at trial.'" *Jalil v. Avdel Corp.,* 873 F.2d 701, 706 (3rd Cir.1989) (citing *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893, 896 (3rd Cir.1987), which case, in turn, cites *Celotex,* 477 U.S. 317, 106 S.Ct. at 2555); *see also Singletary v. Pennsylvania Department of Corrections,* 266 F.3d 186, 193 (3rd Cir.2001) ("'the burden on the moving party [for summary judgment] may be discharged by "showing"-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof"); *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552 ("The moving party 'is entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof").

> Where the party moving for summary judgment is the plaintiff, or the party who bears the burden of proof at trial, the standard is more stringent. The Third Circuit has stated that "where the movant bears the burden of proof at trial and the motion does not establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented."

*National State Bank,* 979 F.2d at 1582 (citing *Resolution Trust Corp. v. Gill,* 960 F.2d 336, 340 (3rd Cir.1992)).

Given the foregoing statement of the law, it is not surprising that a factual dispute itself, as a matter of law, can be viewed as

> "genuine" only if the evidence is such [regarding the fact subject to dispute] that a reasonable jury[, with respect to such factual dispute,] could return a verdict for the nonmoving party. *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 ([U.S.] 1986); *Equimark Comm. Finance Co. v. C.I.T. Financial Serv. Corp.*, 812 F.2d 141, 144 (3d Cir.1987). If evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249–51, 106 S.Ct. at 2511; *Equimark*, 812 F.2d at 144. Where the record, taken as a whole, could not "lead a rational trier of fact to find for the nonmoving party, summary judgment is proper." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 ([U.S.] 1986).

*Hankins v. Temple University*, 829 F.2d 437, 440 (3rd Cir.1987). Put differently, [i]f the defendant in a run-of-the-mill civil case moves for summary judgment ... based on the lack of proof of a material fact, the judge must ask himself ... whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position [regarding, and so as to establish that a genuine dispute exists as to, a particular fact] will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict—"whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed."

*Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512 (emphasis theirs); *see also In re Foxmeyer Corp.*, 286 B.R. 546, 556 (Bankr. D.Del.2002) (J. McCullough, W.D.Pa., presiding) ("a nonmoving party who bears the burden of proof at trial with respect to a claim or defense cannot establish the presence of a genuine factual dispute merely by producing, and then arguing that it has produced, some evidence that would support its version of a fact but, rather, in order to establish such factual dispute, must produce evidence in such support of a weight that would be sufficient such that a reasonable jury could return a verdict for such nonmovant on such fact"). The following are corollaries to the foregoing statements of the law regarding the genuineness of a factual dispute:

(a) a factual dispute, as a matter of law, is "genuine" only if the evidence is such regarding the fact subject to such dispute that a reasonable jury could return a verdict for either the moving or the nonmoving party; and

(b) a factual dispute, as a matter of law, is not "genuine" if the evidence is such regarding the fact subject to such dispute that a reasonable jury could return a verdict for only one of the two parties, that is if such jury could not return a verdict for either of the two parties.

Also important to note is that, even if a genuine factual dispute is shown to exist, such showing may not necessarily suffice to preclude the entry of a summary judgment. Indeed,

the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

*Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2510 (emphasis theirs).

All of the foregoing notwithstanding, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.,* 477 U.S. at 249, 106 S.Ct. at 2511. Therefore, any evidence that the movant presents in an attempt to carry its initial summary judgment burden "must be viewed in the light most favorable to the non-moving party." *National State Bank,* 979 F.2d at 1581 (citing *O'Donnell v. United States,* 891 F.2d 1079, 1081–82 (3rd Cir.1989)). As well, " 'the court must accept as true all reasonable inferences that favor the non-moving party. However, ... [a court] may only consider *reasonable* inferences; ... [it] may not improperly consider those inferences that are unreasonable.' " *Elwell v. PP & L. Inc.,* 2002 WL 31160109 at *4 (3rd Cir.2002) (quoting from the lower court's decision, which it affirmed) (emphasis in original).

"Once the initial burden [of a moving party] has been met, the moving party will prevail only if the evidence would support a directed verdict in its favor." *National State Bank,* 979 F.2d at 1581 (citing *Anderson,* 477 U.S. at 251, 106 S.Ct. at 2511). Put differently, a moving party without the burden of proof at trial is entitled to summary judgment if it meets its initial burden and the nonmoving party fails to respond with evidence that would be sufficient to carry its burden of proof at trial. Accordingly, even if a nonmoving party with the burden of proof at trial can produce some evidence at the summary judgment stage that would support its claim, such party nevertheless cannot withstand a properly supported summary judgment motion if such evidence would be insufficient to carry its burden of proof at trial.

## II. Presumption That Attaches to Proof of Claim and Burden of Proof for a Claim Objection.

 Kirkland's proofs of claim constitute *prima facie* evidence of the validity and amount of her claims against MCP. *See* Fed.R.Bankr.P. 3001(f), 11 U.S.C.A. (West 2004); 4 *Collier on Bankruptcy,* ¶ 502.02[3][f] at 502–18 (Bender 2004). The Trustee, as the party objecting to such claims, "carries the burden of going forward with evidence concerning the validity and the amount of ... [such] claim[s]." 4 *Collier on Bankruptcy,* ¶ 502.02[3][f] at 502–18 to 502–19. "If the [T]rustee succeeds in overcoming the *prima facie* effect given to the claim[s], [then] the ultimate burden ... remains on ... [Kirkland] to prove the validity of the claim[s] by a preponderance of the evidence," *Id.* at 502–19, provided that the ultimate burden of proof outside of bankruptcy is imposed upon her, *see Id.* Kirkland concedes, and the Court summarily holds in any event, that applicable non-bankruptcy law imposes upon her the ultimate burden of proving each of her three claims against MCP by a preponderance of the evidence. The effect of the statements of law contained in the immediately two preceding sentences herein is to return the burden from the objecting party, that is the Trustee, to the claimant, that is Kirkland, if the Trustee can carry his initial burden. *See Id.*

## III. Kirkland's ADA and Rehabilitation Act Claims.

### A. Kirkland's ADA Claim and Pertinent Law Regarding the ADA.

Kirkland contends that MCP violated the ADA by virtue of its alleged conduct towards her, namely MCP's alleged failure

to accommodate her alleged learning disorder—allegedly ADD—and their dismissal of her caused, as Kirkland argues, by their alleged failure to accommodate. The Trustee denies all of the foregoing contentions and allegations, that is the Trustee denies that (a) MCP violated the ADA, (b) MCP failed to provide any accommodations that were warranted, (c) Kirkland even suffered from the learning disorder of ADD, and (d) Kirkland's dismissal from MCP was caused by any action that it took respective of Kirkland.

The Court observes, after reviewing all of Kirkland's various pleadings and briefs that she has filed in the instant matter, as well as the three-count complaint that she first filed in the U.S. District Court prior to the advent of the instant bankruptcy case, that Kirkland never identifies under which particular title of the ADA that she first sued MCP and now pursues the Trustee. An examination of the ADA reveals that there are three particular titles of the ADA under which Kirkland could conceivably have pursued MCP and can now pursue the Trustee, namely Titles I—III.[9] Because Title I of the ADA (42 U.S.C. §§ 12111—12117) legislates against, generally speaking, employment disability discrimination, and since the parties agree that Kirkland was never an employee of MCP, the Court can eliminate Title I of the ADA from further consideration. Therefore, Kirkland necessarily must have intended to pursue her ADA action against MCP, and must now intend to pursue the same against the Trustee, under Titles II and/or III thereof.

■■■ Title II of the ADA (42 U.S.C. §§ 12131—12165) legislates against, generally speaking, various forms of disability discrimination by a public entity. Such title provides, in particular, that

> [s]ubject to the provisions of this subchapter [(i.e., Title II)], no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C.A. § 12132 (West 1995). A "public entity," in turn, is defined, in relevant part, as "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C.A. § 12131(1)(B) (West 2004). A private school is not a "public entity" under ADA Title II unless such school also constitutes a department, agency, etc. of a state or local government. *See, e.g., Ellis v. Morehouse School of Medicine*, 925 F.Supp. 1529, 1539 (N.D.Ga.1996). To prevail on a claim under ADA Title II, a plaintiff must prove that (a) he or she has a disability within the meaning of the ADA, (b) he or she is otherwise qualified, with or without reasonable accommodations, to receive services or participate in programs or activities provided by his or her defendant, (c) he or she, by reason of his or her disability, was denied the benefits of, or excluded from participation in, such services, programs, or activities, or was discriminated against by such defendant, and (d) such defendant was a public

---

9. Titles I—III of the ADA are codified, respectively, at Subchapters I—III of Chapter 126 of Title 42 of the United States Code (U.S.C.). The only remaining subchapter of Chapter 126 of 42 U.S.C. is Subchapter IV, which subchapter serves to codify Title V of the ADA. Such Subchapter IV, that is Title V of the ADA, does nothing more than set forth several miscellaneous provisions that apply generally to the first three titles of the ADA. Therefore, Kirkland's ADA action against MCP conceivably could only have been, and such action against the Trustee now conceivably can only be, brought under Titles 1—III of the ADA.

entity within the meaning of ADA Title II. *See Bowers v. National Collegiate Athletic Ass'n,* 9 F.Supp.2d 460, 475–478 (D.N.J. 1998); 42 U.S.C.A. § 12131(2) (West 1995) (ADA Title II definition of "qualified individual with a disability").

 Title III of the ADA (42 U.S.C. §§ 12181—12189) legislates against, generally speaking, various forms of disability discrimination by a private entity, that is "any entity other than a public entity (as defined in section 12131(1) of this title)," 42 U.S.C.A. § 12181(6) (West 1995). Such title provides, in particular, that

> [n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C.A. § 12182(a) (West 1995). "The following private entities[, in turn,] are considered public accommodations for purposes of this subchapter [(i.e., Title III)], if the operations of such entities affect commerce—... (J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education." 42 U.S.C.A. § 12181(7)(J) (West 1995). To prevail on a claim under ADA Title III, a plaintiff must prove that (a) he or she has a disability within the meaning of the ADA, (b) he or she was discriminated against by his or her defendant on the basis of his or her disability, and (c) such defendant owns, leases (or leases to), or operates a place of public accommodation, *see Bowers,* 9 F.Supp.2d at 480; although not stated as clearly as is the case with an ADA Title II claim, a plaintiff must also demonstrate under ADA Title III that he or she is otherwise qualified, with or without reasonable accommoda-

tions, to enjoy the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation that is owned, leased (or leased to), or operated by his or her defendant, *see* 42 U.S.C.A. § 12182(b)(2)(A)(i)-(iii) (West 1995) (permitting a defendant to deny goods, services, etc. to, among others, disabled individuals who do not meet necessary eligibility criteria, provided that such defendants do not fail to offer reasonable accommodations to such disabled individuals).

 An individual has a "disability" for the purpose of each title of the ADA if such individual

> (A) [has] a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> (B) [has] a record of such an impairment; or
> (C) [is] ... regarded as having such an impairment.

42 U.S.C.A. § 12102(2) (West 1995). "The phrase physical or mental impairment means[, *inter alia,*] ... specific learning disabilities." 28 C.F.R. § 35.104 (2005); 28 C.F.R. § 36.104 (2005). "The phrase major life activities means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 28 C.F.R. § 35.104 (2005); 28 C.F.R. § 36.104 (2005). "[A] person is substantially limited [by an impairment] 'when the individual's important life activities are restricted as to the conditions, manner, or duration under which they can be performed in comparison to most people.' " *Price v. National Board of Medical Examiners,* 966 F.Supp. 419, 425 (S.D.W.Va.1997) (quoting from 28 C.F.R. pt. 36, app. B (1996)); *see also Id.* at 424–427 (citing to pertinent legislative history of the ADA, pertinent regulations of the EEOC, and relevant caselaw, all of

which supports the court's conclusion that a person is not substantially limited unless such limitation amounts to a significant restriction "when compared with the abilities of the average person" or "most people"); 29 C.F.R. § 1630.2(j)(1) (2005) [10] (an EEOC regulation regarding the ADA—although specifically applicable to Title I of the ADA, such pronouncement is relevant to Titles II and III of the ADA because (a) the ADA's definition of the term "disability" is statutorily made applicable to each of Titles I—III of the ADA, and (b) it then follows that "substantially limits" should have a uniform meaning throughout the ADA as well, *see Price*, 966 F.Supp. at n. 2); *Gonzalez v. National Board of Medical Examiners*, 60 F.Supp.2d 703, 707–710 (E.D.Mich.1999) (citing to most of the same authorities that were cited in *Price*), *aff'd*, 225 F.3d 620 (6th Cir.2000). Reconciling the foregoing law, although a learning disability would appear to always constitute an impairment for purposes of the ADA, "a 'learning disability' does not always qualify as a disability under the ADA," *Price*, 966 F.Supp. at 426; *see also Spychalsky v. Sullivan*, 2003 WL 22071602 at *7 (E.D.N.Y.2003) (" 'not every impairment constitutes a disability under the ADA' "); in order for a learning disability to qualify as a disability under the ADA, such learning disorder must substantially limit a major life activity such as, for instance, learning, that is such disorder must restrict, for instance, one's ability to learn as compared with most people or the average person, *see Price*, 966 F.Supp. at 426–428; *Gonzalez*, 60 F.Supp.2d at 707–710; *Spychalsky*, 2003 WL 22071602 at *7. Ac-

cordingly, an individual who attempts to prove that he or she suffers from a disability under the ADA must submit evidence not only that he or she suffers from an impairment—such as, for instance, a learning disorder—but also that such impairment restricts such individual's ability to participate in an important life activity—such as, for instance, learning—when compared with most people. *See Spychalsky*, 2003 WL 22071602 at *7–8 (quoting from *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 198, 122 S.Ct. 681, 691–92, 151 L.Ed.2d 615 (U.S.2002)); *Dorn v. Potter*, 191 F.Supp.2d 612, 622 (W.D.Pa. 2002) (quoting same passage from *Toyota Motor Mfg.*). As well, an individual who attempts to prove that he or she was regarded as having a disability within the meaning of the ADA " 'must show not only that the defendant[ ] regarded [him or her] as somehow disabled, but [also] that *[it] regarded [him or her] as disabled within the meaning of the ADA,*' " *Spychalsky*, 2003 WL 22071602 at *9 (quoting from *Giordano v. City of New York*, 274 F.3d 740, 748 (2nd Cir.2001)) (emphasis theirs), that is that it regarded him or her as having an impairment that restricts his or her ability to participate in an important life activity when compared with most people, *see Dorn*, 191 F.Supp.2d at 625 (citing *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 143 (3rd Cir.1998), and *Tice v. Centre Area Trans. Auth.*, 247 F.3d 506, 514 (3rd Cir. 2001), for the proposition that "it is not sufficient to show that defendant regarded plaintiff as having an impairment; rather, defendant must have regarded plaintiff as

10. 29 C.F.R. § 1630.2(j)(1) provides that
[t]he term substantially limits means:
(i) Unable to perform a major life activity that the average person in the general population can perform; or
(ii) Significantly restricted as to the condition, manner or duration under which an

individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.
29 C.F.R. § 1630.2(j)(1) (2005).

having a *substantially limiting* impairment").

As set forth above, the parties agree that monetary damages under the ADA are statutorily capped at $300,000. However, the Court's examination of the ADA reveals that such cap, while it exists and is applicable to an entity of MCP's size, is confined only to actions that are brought under Title I of the ADA. *See* 42 U.S.C.A. § 12117(a) (West 1995) (section provides the remedies that may be recovered in actions brought only under Title I of the ADA); 42 U.S.C.A. § 1981a(a)(2) (West 2003) (section references two provisions of Title I of the ADA, namely 42 U.S.C. §§ 12117(a) and 12112, and then provides that complainants in actions brought thereunder may recover damages as allowed in 42 U.S.C. § 1981a(b), wherein the statutory cap of $300,000 is set forth at paragraph (3)(D) therein); 2 *Americans With Disabilities: Practice & Compliance Manual* § 7:577 (West 2004). With respect to actions that are brought under Title II of the ADA, monetary damages are both recoverable, *see Dorsey v. City of Detroit,* 157 F.Supp.2d 729, 731 (E.D.Mich. 2001); 28 C.F.R. pt. 35, app. A (1996), and not subject to the cap that is imposed on monetary recoveries under Title I of the ADA, *see* 28 C.F.R. pt. 35, app. A (1999). As for actions that are brought under Title III of the ADA, the remedies available thereunder are expressly limited to those that are available under 42 U.S.C. § 2000a–3(a), *see* 42 U.S.C.A. § 12188(a)(1) (West 1995); *Spychalsky,* 2003 WL 22071602 at *5, which latter provision (a) allows for preventive relief such as injunctions and restraining orders, but (b) does not allow for monetary recoveries to private plaintiffs, *see* 42 U.S.C.A. § 2000a–3(a) (West 2003); *Spychalsky,* 2003 WL 22071602 at *5 (citing *Newman v. Piggie Park Enter., Inc.,* 390 U.S. 400, 401–402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (U.S.1968)). Accordingly, monetary damages are not recoverable by a plaintiff in a private suit brought under Title III of the ADA.[11] *See Spychalsky,* 2003 WL 22071602 at *5 (citing several authorities); *Cole v. National Collegiate Athletic Association,* 120 F.Supp.2d 1060, 1067 (N.D.Ga.2000); *Dorsey,* 157 F.Supp.2d at 733 (citing several authorities); *Guckenberger v. Boston University,* 974 F.Supp. 106, 152 (D.Mass. 1997); 28 C.F.R. § 36.501(a) (2005); 1 *Americans With Disabilities: Practice & Compliance Manual* § 4:199 (West 2004) (citing numerous case authorities).

## B. Kirkland's Rehabilitation Act Claim and Pertinent Law Regarding the Rehabilitation Act.

Kirkland contends that MCP violated the Rehabilitation Act by virtue of the same alleged conduct of MCP towards her that, as described above, she maintains was violative of the ADA. The Trustee, once again, denies such contention of Kirkland.

Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), provides, in pertinent part, that

> [n]o otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or

11. "In contrast, § 12188(b)(2) explicitly allows a court to award monetary damages in a[ Title III] action brought by the Attorney General." *Dorsey,* 157 F.Supp.2d at 733 n. 4. However, "[a] plaintiff may not recover compensatory damages [in a Title III action] based on the speculative argument that it is possible that the United States Department of Justice will intervene in the action." 1 *Americans With Disabilities: Practice & Compliance Manual* § 4:199.

be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C.A. § 794(a) (West 2004).

In order to state a claim under the Rehabilitation Act, ... [a plaintiff] must prove that: 1) he is disabled; 2) that he is "otherwise qualified[,]" [with or without reasonable accommodations,] for the benefit sought or for participation in the program; 3) that he was excluded from participation in, denied the benefit of, or subject to discrimination "solely by reason of ... his disability;" and 4) that the program or activity receives federal financial assistance.

*Bowers*, 9 F.Supp.2d at 490 (citing numerous cases). Having so described a claim under the Rehabilitation Act, it can be said that

[t]he elements of a Rehabilitation Act claim are "identical" to that of an ADA claim, *Rodriguez v. City of New York*, 197 F.3d 611, 618 (2nd Cir.1999), except that under the Rehabilitation Act, the defendant must have discriminated against the plaintiff "solely" because of the plaintiff's disability, whereas under the ADA, it is enough if the plaintiff's disability was a motivating factor in the discrimination.

*Spychalsky*, 2003 WL 22071602 at *6.

▆ Given the aforementioned identity that exists between an ADA claim and a Rehabilitation Act claim, it is not surprising to find that the Rehabilitation Act defines the term "individual with a disability" in a fashion that is practically identical to the definition of "disability" under the ADA. *Compare* 29 U.S.C.A. § 705(20)(B) (West 1999 & Supp.2004) *with* 42 U.S.C. § 12102(2); *see also Bowers*, 9 F.Supp.2d at 490–491 (noting the identity between the two definitions); *Bumstead v. Jasper County*, 931 F.Supp. 1323, 1337 n. 19 (E.D.Tex.1996) (same). As well, the phrases "Physical or mental impairment" and "Major life activities," which phrases appear in both the Rehabilitation Act's definition of "individual with a disability" and the ADA's definition of "disability," are construed by Rehabilitation Act regulations in a fashion that mirrors such phrases' construction in the ADA regulations. *Compare* 34 C.F.R. § 104.3(j)(2)(i)(B) & (ii) *with* 28 C.F.R. § 35.104 (2005) *and* 28 C.F.R. § 36.104 (2005). Finally, although Rehabilitation Act regulations fail to provide interpretive guidance regarding the phrase "substantially limits," which phrase appears in both the Rehabilitation Act's definition of "individual with a disability" and the ADA's definition of "disability," courts have uniformly interpreted such phrase (i.e., "substantially limits") within the context of the Rehabilitation Act to mean the same thing that it means for purposes of the ADA. *See, e.g., Spychalsky*, 2003 WL 22071602 at *8 (applying 28 C.F.R. pt. 35, app. A, which is an ADA regulation, to a Rehabilitation Act claim); *Banks v. Potter*, 253 F.Supp.2d 335, 348 (D.Conn.2003) (applying 29 C.F.R. § 1630.2(j)(1), which is an EEOC regulation regarding the ADA, to a Rehabilitation Act claim); *Bumstead*, 931 F.Supp. at 1336 (same). Therefore, and for instance, a plaintiff with a learning disability cannot, by virtue of such learning disorder, also be considered to be an "individual with a disability" for purposes of the Rehabilitation Act unless such plaintiff can demonstrate that (a) such learning disorder restricts the condition, manner, or duration under which he or she can perform an important life activity such as, for instance, learning, when compared to most people or, stated differently, when compared to the average person in the general

population, (b) he or she has a record of such a learning disorder, or (c) he or she was regarded as having such a learning disorder. *See Spychalsky,* 2003 WL 22071602 at *7–11.

The Rehabilitation Act defines "the term 'program or activity' [to] mean[ ] all of the operations of … [, *inter alia,*] a college, university, or other postsecondary institution …[,] any part of which is extended Federal financial assistance." 29 U.S.C.A. § 794(b)(2)(A) (West 2004). The Court understands the Trustee to concede that MCP, at all times relevant to the instant matter, constituted a program that received federal financial assistance.

## C. *The Trustee's Initial Claims Objection Burden.*

■ The Court holds that the Trustee carries his initial claims objection burden regarding Kirkland's ADA and Rehabilitation Act claims, that is the Court concludes that the Trustee has presented evidence sufficient to overcome the *prima facie* effect given to such claims. The Court so rules because the Trustee has presented substantial evidence in conjunction with the bringing of the Trustee's Present Summary Judgment Motion to refute at least one of the allegations essential to, that is at least one of the requisite elements of, Kirkland's ADA and Rehabilitation Act claims, namely that she was disabled within the meaning of the two statutes.

As set forth above, Kirkland was disabled within the meaning of the ADA and the Rehabilitation Act if (a) she had a physical or mental impairment that substantially limited one or more of her major life activities, (b) a record exists that she had such an impairment, or (c) she was regarded as having such an impairment. *See supra* pp. 793 & 796. The impairment that Kirkland contends she had is the learning disorder of ADD. Although Kirk-

land fails to allege which major life activity her alleged ADD substantially limited, the Court must presume that she argues that such learning disorder substantially limited her ability to learn. In order to prevail on the issue of whether she had a disability within the meaning of the ADA and the Rehabilitation Act, Kirkland must thus demonstrate that (a) she actually had ADD and that such affliction substantially limited her ability to learn, (b) records exist that would document the same, or (c) MCP regarded her (i) as having ADD, and (ii) as having such affliction to such a degree that it substantially limited her ability to learn. Because of the fashion in which the phrase "substantially limits" is, in turn, defined for purposes of the ADA and the Rehabilitation Act, Kirkland cannot prevail on the issue of whether she had a disability within the meaning of such statutes unless she can demonstrate that (a) she actually had ADD and that such affliction restricted the condition, manner, or duration under which she could learn when compared to most people or, stated differently, when compared to the average person in the general population, (b) records exist that would document the same, or (c) MCP regarded her (i) as having ADD, and (ii) as having such affliction to such a degree that the same restricted her ability to learn in comparison to the average person in the general population. *See supra* pp. 793–95 & 796–97.

■ The only evidentiary submissions by either party pertinent to the subissues of whether Kirkland actually suffered from ADD and, if so, whether such affliction actually restricted her ability to learn in comparison to the average person in the general population, are the Rutgers Report, the 1996 PsychoEducational Report, and the 1998 PsychoEducational Report; both parties offer such evidence in

support of, and in response to, their present dueling summary judgment motions. The Rutgers Report, because it contains the express conclusion that Kirkland did not suffer from any learning disability, let alone ADD, and since it was composed by evaluators independent of those that composed either the 1996 PsychoEducational Report or the 1998 PsychoEducational Report, constitutes substantial evidence that Kirkland actually did not have ADD, the contradictory conclusion in the 1998 PsychoEducational Report notwithstanding. Furthermore, because each of the three reports graded her various learning-related abilities at between low average and superior when such abilities were compared to those of other adults her age or the general population, and since "[a]verage, or even slightly below average, is not disabled for purposes of the ADA" or, consequently, the Rehabilitation Act, *Gonzalez*, 60 F.Supp.2d at 708 (citing *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 119 S.Ct. 2139, 2147–49, 144 L.Ed.2d 450 (U.S. 1999)), such reports constitute substantial evidence that, whatever her affliction, it did not operate to restrict her ability to learn in comparison to the average person in the general population. Additionally, "[a]lthough significant academic achievement does not negate a student's claim that he [or she] has a learning disability, the education history [of such student] is relevant to the inquiry." *Id.; see also Price*, 966 F.Supp. at 427 ("each of the students has a history of significant scholastic achievement reflecting a complete absence of any substantial limitation on learning ability"); *Spychalsky*, 2003 WL 22071602 at *8 (same proposition); *Dorn*, 191 F.Supp.2d at 623 (same). Because Kirkland has attained what she must concede constitutes significant academic success—namely that she (a) attended college at and then graduated from Dartmouth University, and (b) then successfully gained admittance to MCP, an accredited medical school—and since such academic success is relevant to the issue of whether, and tends to negate a conclusion that, any affliction that she suffered from substantially limited her ability to learn in comparison to most people, such academic success also constitutes substantial evidence that, whatever Kirkland's affliction, it did not operate to restrict her ability to learn in comparison to the average person in the general population.

With respect to the issue of whether records exist that would document that Kirkland suffered from a substantially limiting learning disorder, because Kirkland concedes that the three reports discussed above—i.e., the Rutgers Report, the 1996 PsychoEducational Report, and the 1998 PsychoEducational Report—are the only ones which exist that could provide such documentation, and since such reports instead document the contrary (i.e., that her learning ability was not substantially limited by any learning disorder that she might have suffered from), such reports constitute substantial evidence that records do not exist that would document that she suffered from a substantially limiting learning disorder.

Finally, Kirkland's position that MCP regarded her as having ADD notwithstanding, the Court understands the Trustee to argue that MCP never actually regarded Kirkland as having ADD or any other learning disorder, let alone, and more importantly, a substantially limiting learning disorder (i.e., one that operated to restrict her ability to learn in comparison to the average person in the general population). The Trustee points to the following evidence, which evidence the Court finds to be substantial, as supportive of his position as set forth in the immediately preceding sentence:

(a) that the Rutgers Report expressly concludes that Kirkland did not suffer from ADD or any other learning disorder;

(b) that the 1996 PsychoEducational Report is equivocal at best regarding whether Kirkland suffered from ADD or any other learning disorder;

(c) that the Rutgers Report and the 1996 PsychoEducational Report both graded Kirkland's various learning-related abilities at between low average and superior, that is at a level that is not considered to be substantially limiting for purposes of either the ADA or the Rehabilitation Act; and

(d) that the Rutgers Report and the 1996 PsychoEducational Report are the only reports that MCP had the opportunity to see prior to each of the instances when MCP allegedly failed to accommodate Kirkland's alleged learning disorder—the preceding fact necessarily follows from the fact that the last of the three reports in question, that is the 1998 PsychoEducational Report, was not even given to MCP until on or about June 30, 1998, which date is substantially subsequent to the date of Kirkland's various course failures, as well as every administrative decision by MCP regarding her save the final, perhaps largely ministerial decision to dismiss in July 1998.

Because the Trustee succeeds in overcoming the *prima facie* effect given to Kirkland's ADA and Rehabilitation Act claims, and since applicable nonbankruptcy law imposes upon Kirkland the ultimate burden of proving each such claim, the burden of going forward shifts back to Kirkland, and she retains as well the ultimate burden of proving the validity of such claims by a preponderance of the evidence.

### D. *The Court's Sua Sponte Grant of Summary Judgment Against Kirkland Regarding Her ADA Claim.*

■ Before proceeding to address the parties' summary judgment motions as the same pertain to Kirkland's ADA and Rehabilitation Act claims, the Court detects on its own a fatal flaw in Kirkland's ADA claim, which flaw is frankly observable from a mere examination of Kirkland's District Court Complaint, which complaint is attached as supporting documentation to Kirkland's proofs of claim and her Motion to Compel Payment of Administrative Expense. Such complaint reveals the following:

(a) that Kirkland alleges that she was a student at, rather than an employee of, MCP, *see* Kirkland's District Court Complaint ¶ 5 [12]—this point, as set forth above, has since been agreed to by the parties;

(b) that Kirkland alleges that MCP "is a private college," *see* Kirkland's District Court Complaint ¶ 2;

(c) that Kirkland does not seek any form of preventive relief with respect to her ADA claim—or, for that matter, with respect to any of her three claims—and that she instead confines her relief request to various monetary damages and reinstatement at MCP, *see* Kirkland's District Court Complaint, at p. 7—as set forth above, Kirkland apparently no longer seeks, and is in any event, now legally barred from seeking such reinstatement.

---

12. Kirkland's District Court Complaint is attached as Exhibit A to her Motion to Compel Payment of Administrative Expense. *See* Tr. Mot. Summ. J. Ex. A.

Because the foregoing judicial representations by Kirkland are contained within a pleading that Kirkland herself presently submits to this Court, such representations are thereby affirmatively adopted, that is effectively made, by her during the course of the instant litigation. The legal effect of the preceding is that such representations by Kirkland constitute binding and conclusive judicial admissions by her within the present litigation. *See Foxmeyer Corp.*, 286 B.R. at 568 (noting that *effective* pleadings in a case constitute binding and conclusive judicial admissions within such case). Since such judicial admissions are binding and conclusive within the instant litigation, Kirkland, of course, cannot presently genuinely dispute the substance of the same. For the reasons set forth below, such judicial admissions by Kirkland operate, as a matter of law, to prevent Kirkland from prevailing on her ADA claim.

■ First, and as set forth above, there are only three particular titles of the ADA under which Kirkland can now conceivably pursue the Trustee, namely Titles I—III. *See supra* p. 792 n. 9. Second, and as set forth above, Title I of the ADA is applicable only to employment disability discrimination. *See supra* p. 792. Of course, since Kirkland admits, and the parties now agree in any event, that she was a student at, rather than an employee of, MCP, she cannot recover against the Trustee under Title I of the ADA as a matter of law. Third, and as set forth above, Title II of the ADA only applies to disability discrimination that is committed by a "public entity," which latter term cannot conceivably be stretched to include a private college unless such private college also constitutes a department, agency, special purpose district, or other instrumentality of a state or local government. *See supra* pp. 792–93. Because Kirkland admits that MCP is a private college, and since she has failed to allege that MCP

constitutes a department, agency, etc. of the Commonwealth of Pennsylvania, the Court necessarily must (a) find—or, stated differently, a genuine dispute does not exist—that MCP is not a public entity, and (b) hold, as a matter of law, that Kirkland cannot prevail against the Trustee under Title II of the ADA. Fourth, and as set forth above, only preventive relief may be recovered by a private plaintiff under Title III of the ADA. *See supra* p. 795. Because, as set forth in Kirkland's District Court Complaint, she seeks relief with respect to each of her claims that is not preventive in nature—monetary damages are obviously not preventive in nature and neither is relief in the form of reinstatement given that reinstatement is sought not to prevent action by a defendant but rather to redress action that has already been taken—Kirkland, as a matter of law, cannot prevail against the Trustee under Title III of the ADA. Accordingly, the Trustee is entitled to immediate judgment against Kirkland on her ADA claim, that is the Trustee's objection to such ADA claim must be sustained and such claim, accordingly, shall be disallowed in its entirety.

■ As for the procedural vehicle by which the Court can sustain the Trustee's objection to Kirkland's ADA claim on the foregoing grounds, which grounds the Trustee has thus far failed to raise himself, the Court, on the basis of such grounds, *sua sponte* grants its own summary judgment motion in favor of the Trustee solely as to Kirkland's ADA claim. The Court may so act in a *sua sponte* manner. *See Bryson v. Brand Insulations, Inc.*, 621 F.2d 556, 559 (3rd Cir.1980) (court may dismiss an action *sua sponte* for failure to state a claim and may *sua sponte* grant summary judgment); *Celotex*, 477 U.S. at 326, 106 S.Ct. at 2554 ("district courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*");

*Davis Elliott Int'l, Inc. v. Pan American Container Corp.,* 705 F.2d 705, 707 (3rd Cir.1983) (quoting from *Bryson* ). Furthermore, although the cases seem to uniformly call for notice and a hearing prior to the Court's grant of its own summary judgment motion, *see, e.g., Bryson,* 621 F.2d at 559; *Celotex,* 477 U.S. at 326, 106 S.Ct. at 2554, the Court concludes that it may practically dispense with such notice and a hearing in the instant case for several reasons, the most important of which is that at least one additional, independent basis, that is procedural vehicle, exists by which summary judgment may presently be granted in the Trustee's favor on Kirkland's ADA claim, namely the Trustee's Present Summary Judgment Motion (and the grounds presented therein), for which motion Kirkland unquestionably has received notice and a hearing.[13]

### E. *The Trustee's Present Summary Judgment Motion and Kirkland's Partial Summary Judgment Motion.*

With respect to the Trustee's Present Summary Judgment Motion, since Kirkland, the nonmoving party, has the burden of persuasion at trial regarding her ADA and Rehabilitation Act claims, the Trustee, as the moving party, may meet his initial summary judgment burden—i.e., that genuine material factual disputes do not exist and that he is entitled to judgment as a matter of law—vis-a-vis such claims by showing that genuine material factual disputes do not exist and that the evidentiary materials of record, if reduced to admissi-

ble evidence, would be insufficient to carry Kirkland's burden of proof at trial regarding such claims. *See supra* p. 789. If the Trustee meets such initial summary judgment burden, then Kirkland can withstand the Trustee's Present Summary Judgment Motion only if she refutes the Trustee's showing or, put differently, if she demonstrates either the presence of genuine material factual disputes or that the record evidence would suffice to carry her burden of proof at trial regarding the claims in question. *See supra* p. 791. The Trustee contends that the record evidence would not suffice to carry Kirkland's burden of proof at trial with respect to the following items, each of which the Trustee characterizes as a requisite element or subelement of Kirkland's ADA and Rehabilitation Act claims: (a) that Kirkland suffered from a disability within the meaning of both statutes, (b) that she provided MCP with sufficient documentation of such disability, (c) that she made reasonable requests for accommodations, and (d) that MCP denied any requests for accommodations that were reasonable.

In order for Kirkland to prevail on her partial summary judgment motion vis-a-vis her ADA and Rehabilitation Act claims, Kirkland must first affirmatively demonstrate that, with respect to the portion of such claims (i.e., elements or subelements) for which she so moves, genuine material factual disputes do not exist and that she is entitled to judgment as a matter of law. Kirkland contends, both in her partial summary judgment motion and in her sup-

---

**13.** The Court also notes that the primary reason to afford a nonmovant notice and a hearing regarding a summary judgment motion is so that such nonmovant may then have a meaningful opportunity to present all of its evidence in opposition to such motion. *See, e.g., Bryson,* 621 F.2d at 559; *Celotex,* 477 U.S. at 326, 106 S.Ct. at 2554. The Court questions whether notice and a hearing would be required with respect to the Court's instant *sua sponte* summary judgment motion, however, given that Kirkland necessarily cannot genuinely dispute the substance of her binding and conclusive judicial admissions, which judicial admissions, as set forth above, operate, by themselves and as a matter of law, to prevent Kirkland from prevailing on her ADA claim.

porting brief, that she is entitled to summary judgment on the issue of whether—or, stated differently, that a genuine dispute does not exist that—she provided MCP with sufficient documentation regarding her alleged disability. In fact, such motion and brief reveal that Kirkland seeks partial summary judgment only on such documentation issue. However, and of course, Kirkland cannot obtain summary judgment on such documentation issue unless the Court first finds that she suffered from a disability within the meaning of the ADA and the Rehabilitation Act. Not surprisingly then, an examination of Kirkland's supporting brief reveals that she also takes the position that a genuine dispute does not exist that she suffered from a disability within the meaning of both of the two statutes. The Court can only surmise from Kirkland's omission of such latter issue from her partial summary judgment motion that she apparently (a) operates under the presumption that the Trustee presently concedes that she had a disability within the meaning of the two statutes, and (b) assumes, as a result of such apparent presumed concession, that the Court must find that she suffered from such a disability. Because such presumption is, of course, mistaken to say the least, the Court shall construe Kirkland's partial summary judgment motion such that she also presently seeks judgment on the issue of whether she had a disability within the meaning of the ADA and the Rehabilitation Act.

Because the Court finds that it can render rulings on both parties' summary judgment motions by focusing solely on the element of whether Kirkland suffered from a disability within the meaning of the ADA and the Rehabilitation Act, the Court need not, and thus will not, explore further whether either party is entitled to summary judgment on other grounds.

As set forth above, in order to prevail on the issue of whether she had a disability within the meaning of the ADA and the Rehabilitation Act, Kirkland must demonstrate that (a) she actually had ADD and that such affliction substantially limited her ability to learn (i.e., that such affliction restricted the condition, manner, or duration under which she could learn when compared to the average person in the general population), (b) records exist that would document the same, or (c) MCP regarded her (i) as having ADD, and (ii) as having such affliction to such a degree that it substantially limited her ability to learn. *See supra* p. 797. The Court renders the following rulings relevant to the parties' summary judgment motions vis-a-vis the issue of whether Kirkland had a disability within the meaning of the two statutes:

(a) a genuine dispute exists regarding the issue of whether Kirkland actually suffered from ADD because, given the relevant record evidence, a reasonable jury or factfinder (hereafter "reasonable jury") could return a verdict for either party on such issue, that is a reasonably jury might or might not find that she has preponderantly proven that she had ADD;

(b) genuine disputes do not exist regarding the issues of whether Kirkland's ADD substantially limited her ability to learn and whether records exist that would document that her ADD was so substantially limiting because, given the relevant record evidence, a reasonable jury could only return a verdict for the Trustee on such issues, that is a reasonable jury could only find that Kirkland has not preponderantly proven that (i) her ADD substantially limited her

learning ability, and (ii) such records exist;

(c) a genuine dispute exists regarding the issue of whether MCP regarded Kirkland as having ADD because, given the relevant record evidence, a reasonable jury could return a verdict for either party on such issue, that is a reasonable jury might or might not find that Kirkland has preponderantly proven that MCP regarded Kirkland as having ADD; and

(d) a genuine dispute does not exist regarding the issue of whether MCP regarded Kirkland as having ADD to such a degree that it substantially limited her ability to learn because, given the relevant record evidence, a reasonable jury could only return a verdict for the Trustee on such issue, that is a reasonable jury could only find that Kirkland has not preponderantly proven that MCP regarded her as having ADD to such a degree that it substantially limited her learning ability.

The rationale for the preceding rulings by the Court is set forth in detail below.

The Court rules that a reasonable jury could return a verdict for either Kirkland or the Trustee on the issue of whether, that is such jury might or might not find that Kirkland has preponderantly proven that, she actually had ADD given the contradictory assessments contained in the Rutgers Report and the 1998 PsychoEducational Report, which reports, when coupled with the 1996 PsychoEducational Report, constitute the entirety of the evidence submitted by the parties relevant to such issue. As set forth above, the Rutgers Report contains an express conclusion that Kirkland did not suffer from any learning disability, let alone ADD. The 1998 PsychoEducational Report, however, sets forth a contrary conclusion (i.e., that Kirkland suffered from ADD). The Court concludes that a reasonable jury could find that it is more likely than not, that is such jury could find that Kirkland has preponderantly proven, that she had ADD because the Court concludes, in turn, that such jury might reasonably attach more weight to the 1998 PsychoEducational Report than to the Rutgers Report—a reasonable jury might do so, for instance, because it might reasonably identify significant distinctions between the two reports that might, in turn, cause it to attach more weight to the evaluations by PsychoEducational Associates when compared to Rutgers University's evaluation. The Court also concludes, however, that a reasonable jury could, on the other hand, find that it is at least as likely as not that Kirkland did not have ADD—that is, such jury could find that Kirkland has not preponderantly proven that she had ADD—because the Court concludes, in turn, that such jury might reasonably be unable to attach any more weight to the 1998 PsychoEducational Report than to the Rutgers Report.

The Court rules that a reasonable jury could only return a verdict for the Trustee on the issue of whether, that is such jury could only find that Kirkland has not preponderantly proven that, Kirkland's ADD substantially limited her learning ability because the Rutgers Report, the 1996 PsychoEducational Report, and the 1998 PsychoEducational Report (a) each graded her various learning-related abilities at between low average and superior when compared to other adults her age or the general population, which grades, as set forth above, establish, as a matter of law, that her ability to learn compared favorably to that of the average person in the general population, (b) each fail to indicate that

Kirkland would have even graded out at below average if any of her learning-related abilities had been compared to those of other college level adults, (c) each fail to expressly conclude that Kirkland suffered from a learning disorder that operated to substantially impair her ability to learn, either when compared to the general population or, for that matter, any segment thereof, and (d) collectively constitute the only evidence that Kirkland has submitted relevant to the issue of whether her ADD substantially limited her learning ability.[14]

The Court rules that a reasonable jury could only return a verdict for the Trustee on the issue of whether, that is such jury could only find that Kirkland has not preponderantly proven that, records exist that would document that Kirkland's ADD substantially limited her learning ability because the parties agree that the three reports discussed above—i.e., the Rutgers Report, the 1996 PsychoEducational Report, and the 1998 PsychoEducational Report—are the only ones that exist that could conceivably document that Kirkland suffered from a substantially limiting learning disorder, yet such reports instead document the contrary (i.e., that her learning ability was not substantially limited by any learning disorder that she might have suffered from).

The Court rules that a reasonable jury could return a verdict for either Kirkland or the Trustee on the issue of whether, that is such jury might or might not find that Kirkland has preponderantly proven that, MCP regarded Kirkland as having ADD because the evidence that Kirkland submits on the issue is equivocal at best. The Court so rules for several reasons. As an initial matter, the universe of evidence that Kirkland submits to the Court

relevant to the issue of whether MCP regarded her as having ADD consists of the following:

(a) the undisputed fact that MCP's Learning Disability Policy accorded to MCP students with a documented learning disability extra test-taking time;

(b) the undisputed fact that MCP allowed Kirkland extended time to take all of her first-year course examinations after she provided MCP with copies of the Rutgers Report and the 1996 PsychoEducational Report; and

(c) the Risen Letter, portions of which Kirkland contends establish that MCP regarded her as having ADD.

Taking first MCP's Learning Disability Policy and the fact that MCP accorded to Kirkland additional test-taking time, the Court concludes that a reasonable jury could find therefrom that it is more likely than not, that is such jury could find therefrom that Kirkland has preponderantly proven, that MCP regarded her as having ADD because the Court concludes, in turn, that such jury might reasonably infer therefrom that the only reason why MCP accorded to Kirkland such additional test-taking time was because they also regarded her as having ADD. The Court also concludes, however, that a reasonable jury could, on the other hand, find such evidence to be unconvincing and, accordingly, find that it is at least as likely as not that MCP did not regard Kirkland as having ADD—that is, such jury could find in spite of such evidence that Kirkland has not preponderantly proven that MCP regarded her as having ADD. The Court so concludes because it concludes, in turn, that such jury might reasonably infer that

---

**14.** As set forth above, the Trustee submits additional evidence that is damaging to Kirkland's *prima facie* case on the issue of wheth-er her alleged ADD was substantially limiting, namely her educational achievements thus far in her life.

MCP accorded additional test-taking time to Kirkland only for reasons other than an application of MCP's Learning Disability Policy, such as, for instance, an application by MCP to Kirkland of MCP's Special Testing Procedures Policy, which internal policy of MCP would also appear to have allowed for its students to receive, *inter alia,* additional test-taking time but without the requirement that such students necessarily first be diagnosed as having a learning disorder—such an inference would be entirely reasonable given that Kirkland has failed to produce any evidence that MCP could only have afforded its students additional test-taking time via an application of MCP's Learning Disability Policy. Proceeding next to the Risen Letter, the relevant contents of which are reproduced at footnote 5 in the instant opinion, the Court finds such letter to be as equivocal on the issue of whether MCP regarded Kirkland as having ADD as the junction of MCP's Learning Disability Policy and the fact that MCP accorded to Kirkland additional test-taking time. In particular, the Court concludes that a reasonable jury could infer from language within such letter—to wit, Risen's admission that Kirkland submitted a report to MCP from a psychologist that indicated that she had ADD and that MCP then gave her additional test-taking time—that it is more likely than not that MCP regarded Kirkland as having ADD. However, and once again, the Court concludes that a reasonable jury could, on the other hand, find such evidence to be unconvincing and, accordingly, find that it is at least as likely as not that MCP did not regard Kirkland as having ADD. The Court so concludes because it concludes, in turn, that (a) the Risen Letter is devoid of an admission that MCP accepted as true the report that MCP acknowledges therein it received from Kirkland, (b) the contents of the Risen Letter fail to eliminate as a reasonable possibility that MCP may have accorded additional test-taking time to Kirkland for reasons other than that they regarded her as having ADD, and (c) a reasonable jury might thus reasonably infer that MCP accorded additional test-taking time to Kirkland only for reasons other than an application of MCP's Learning Disability Policy.

The Court rules that a reasonable jury could only return a verdict for the Trustee on the issue of whether, that is such jury could only find that Kirkland has not preponderantly proven that, MCP regarded Kirkland as having ADD to such a degree that it substantially limited her ability to learn because (a) the universe of evidence that Kirkland submits on such issue consists of nothing other than the same evidence that she submits that goes to the issue of whether MCP merely regarded her as having ADD, and (b) even if such jury were to find from such evidence that MCP accorded to Kirkland additional test-taking time only by virtue of MCP's Learning Disability Policy (i.e., such jury were to thus find that MCP regarded her as having ADD), it could never follow only from such evidence, that is such jury could never find only from such evidence that it is more likely than not, that MCP regarded Kirkland's ADD as being of a substantially limiting nature. The Court so rules because MCP, pursuant to MCP's Learning Disability Policy, had to grant to its learning disabled students additional test-taking time regardless of the degree to which such students were learning disabled, that is regardless of whether such students' learning disabilities were substantially limiting. As a result, a reasonable jury could never find from the mere fact that MCP accorded additional test-taking time to one of its students via MCP's Learning Disability Policy that it is more likely than not that MCP also re-

garded such student's learning disability as being of a substantially limiting nature; instead, the most that such jury could find from such mere fact is that it is only as likely *as not* that MCP regarded such student's learning disability as being of a substantially limiting nature, that is such jury could only conclude from such mere fact that it is equally likely that MCP did not regard such student's learning disability as being of a substantially limiting nature. Accordingly, even if it were to find that MCP gave Kirkland additional test-taking time because MCP regarded her as learning disabled (i.e., as having ADD), a reasonable jury could never infer from such fact that it is more likely than not, that is such jury could never find that Kirkland has thereby preponderantly proven, that MCP regarded such learning disability of Kirkland as having been substantially limiting in nature. The Court also summarily rules that there is nothing contained within the Risen Letter that would allow a reasonable jury to find that it is more likely than not, that is which would allow such jury to find that Kirkland has preponderantly proven, that MCP regarded Kirkland as having ADD to such a degree that it substantially limited her ability to learn—quite simply, such letter says nothing that could potentially be construed to indicate one way or the other the degree to which MCP might have considered Kirkland to have a learning disability, presuming *arguendo* that such letter could operate to establish that MCP regarded her as having a learning disability in the first place.

The significance of the foregoing rulings by the Court cannot be exaggerated. Indeed, in light of such rulings, the Court further holds that (a) the Trustee meets his initial burden with respect to the ADA and Rehabilitation Act portions of the Trustee's Present Summary Judgment Motion, (b) Kirkland's response to such motion is insufficient to withstand such motion as it pertains to her ADA and Rehabilitation Act claims, and (c) the Trustee's Present Summary Judgment Motion shall, therefore, be granted as it pertains to Kirkland's ADA and Rehabilitation Act claims. As well, such rulings compel the Court to deny Kirkland's partial summary judgment motion. The Court so rules with respect to the Trustee's Present Summary Judgment Motion because, after having considered all of the evidence submitted relevant to the same, the Court, as set forth above, holds that genuine disputes do not exist, and that Kirkland fails to produce evidence that would be sufficient to carry her burden of proof at trial, regarding any of the issues that are dispositive of whether she had a disability within the meaning of the ADA and the Rehabilitation Act, namely whether (a) Kirkland's ADD substantially limited her learning ability (presuming *arguendo* that she had ADD in the first place), (b) records exist that would document that Kirkland's ADD substantially limited her learning ability, and (c) MCP regarded Kirkland as having ADD to such a degree that it substantially limited her ability to learn (presuming *arguendo* that MCP regarded her as having ADD in the first place). Since Kirkland fails to produce evidence that would be sufficient to carry her burden of proof at trial with respect to any of the aforesaid dispositive issues, and given that she must, as a matter of law, carry such burden with respect to at least one of such issues in order to establish that she had a disability within the meaning of the ADA and the Rehabilitation Act, the Trustee is entitled to a judgment as a matter of law (a) to the effect that she did not have such a disability, and (b) on both of Kirkland's ADA and Rehabilitation Act claims. Given that the Court grants the Trustee's Present Summary Judgment Motion as it pertains to

Kirkland's ADA and Rehabilitation Act claims, it is not surprising that the Court denies Kirkland's partial summary judgment motion. However, and more formally, the Court rules as it does with respect to Kirkland's partial summary judgment motion because, although genuine disputes do not exist regarding any of the aforesaid dispositive issues, Kirkland, as set forth above, fails to produce evidence that would be sufficient to carry her burden of proof at trial with respect to at least one of such issues. Since she fails to produce evidence that would be sufficient to carry her burden of proof at trial with respect to at least one of the aforesaid dispositive issues, and given that she must do so as a matter of law in order to establish that she had a disability within the meaning of the ADA and the Rehabilitation Act, she is not entitled to a judgment as a matter of law to the effect that she had such a disability.

Finally, it matters not to the Court's decision to grant the Trustee's Present Summary Judgment Motion as it pertains to Kirkland's ADA and Rehabilitation Act claims that the parties genuinely dispute whether (a) Kirkland had ADD, and (b) MCP regarded her as having ADD. The Court so rules because (a) only disputes over facts that might affect the outcome of the suit under the governing law, that is disputes over material facts, will, as set forth above, properly preclude the entry of summary judgment, see supra pp. 790–91, and (b) disputes over the two facts for which the parties genuinely disagree will not affect a resolution of the ultimate issue that is dispositive of Kirkland's ADA and Rehabilitation Act claims, namely whether Kirkland had a disability within the meaning of the two statutes. That the issue of whether Kirkland had ADD is immaterial to the outcome of the issue of whether she had a disability within the meaning of the ADA and the Rehabilitation Act follows because, even if the Court were to find

that Kirkland could carry her burden of proof at trial on such issue, she still fails to produce evidence that would be sufficient to preponderantly establish at trial that such ADD substantially limited her learning ability—such failure on her part is significant, indeed fatal, to her cause because what she must show to satisfy the first method by which she can establish that she had a disability within the meaning of the two statutes is not merely that she had ADD but rather that she had a disability (i.e., ADD) that operated to substantially limit her learning ability, see supra pp. 794–95 & 796–97. As well, that the issue of whether MCP regarded Kirkland as having ADD is immaterial to the outcome of the issue whether she had a disability within the meaning of the ADA and the Rehabilitation Act follows because, even if the Court were to find that Kirkland could carry her burden of proof at trial on such issue, she still fails to produce evidence that would be sufficient to preponderantly establish at trial that MCP regarded Kirkland as having ADD to such a degree that it substantially limited her ability to learn—such failure on her part is significant, indeed fatal, to her cause because what she must show to satisfy the third method by which she can establish that she had a disability within the meaning of the two statutes is not merely that MCP regarded her as having ADD but rather that MCP regarded her as having a disability (i.e., ADD) that operated to substantially limit her learning ability, see supra pp. 795 & 796–97.

For all of the foregoing reasons, the Court shall (a) grant the Trustee's Present Summary Judgment Motion as it pertains to Kirkland's ADA and Rehabilitation Act claims, and (b) deny Kirkland's partial summary judgment motion with prejudice. By granting the Trustee's Present Summary Judgment Motion as it pertains to

Kirkland's ADA and Rehabilitation Act claims the Court thereby sustains the Trustee's objection to such claims, which means that such claims shall be disallowed in their entirety.

## IV. *Kirkland's Breach of Contract Claim.*

As set forth in Kirkland's District Court Complaint, she maintains that (a) an implied-in-fact contract existed between herself and MCP while she was a student there, pursuant to which she paid tuition to MCP in return for the provision by MCP to her of a medical education, (b) the terms and conditions of such contract included, *inter alia,* those terms and conditions as set forth in the literature that MCP provided to all of its students and, in particular, the terms and conditions of MCP's Learning Disability Policy, MCP's Special Testing Procedures Policy, and an Academic Diagnostic Testing policy that, according to Kirkland, was also provided by MCP to its students (hereafter "MCP's Academic Diagnostic Testing Policy"),[15] (c) she fully performed under such implied-in-fact contract by paying the required tuition to MCP, (d) MCP breached such implied-in-fact contract by failing to provide her with a fair opportunity to obtain the medical education that it agreed to provide to her, and (e) MCP breached with respect to her, in particular, MCP's Learning Disability Policy, MCP's Special Testing Procedures Policy, and MCP's Academic Diagnostic Testing Policy. *See* Kirkland's District Court Complaint ¶¶ 41–

45. During the course of the Trustee's objection to Kirkland's claims, Kirkland has argued further that MCP breached its contractual duties to her by violating the ADA and the Rehabilitation Act. *See* November 15, 2004 Kirkland Opp'n Br., at p. 13.

At the outset, the Trustee quarrels with whether a contract, even of the implied-in-fact variety, existed between Kirkland and MCP. Assuming that such a contract existed, the Trustee denies that MCP breached such contract in any way and argues, instead, that Kirkland breached such contract by virtue of her substandard academic performance. The Trustee, via the Trustee's Present Summary Judgment Motion, moves for summary judgment with respect to Kirkland's breach of contract claim; Kirkland, by virtue of her partial summary judgment motion, does not seek summary judgment with respect to any part of her breach of contract claim.

■ In order to prevail on a claim for breach of contract under Pennsylvania law, a plaintiff must prove the following:

(1) the existence of a valid and binding contract to which the plaintiff and defendants were parties; (2) the contract's essential terms; (3) that plaintiff complied with the contract's terms; (4) that the defendant breached a duty imposed by the contract; and (5) damages resulting from the breach.

*Flynn v. LaSalle University,* 1998 WL 599512 at *4 (E.D.Pa.1998) (citing *Gund-*

---

**15.** Kirkland alleges that the terms and conditions of such Academic Diagnostic Testing policy were as follows:

Students admitted to medical school have documented their ability to excel in an academic environment. In spite of this, the volume of work in medical school sometimes exposes an area of difficulty that was easily compensated for in a less demanding academic setting. Psychoeducational test-

ing by a licensed psychologist is available for medical students who suspect they are experiencing such a problem. Testing assists in identifying the exact area of difficulty and provides a reliable guide for developing a prescriptive program based on the unique strengths of the student. Testing and results are confidential.

*See* Kirkland's District Court Complaint ¶ 8.

lach v. Reinstein, 924 F.Supp. 684, 688 (E.D.Pa.1996)); see also Dillon v. Ultrasound Diagnostic Schools, 1997 WL 805216 at *2 (E.D.Pa.1997) (same). "A review of the relevant Pennsylvania authority reveals that a student may bring a contract action to enforce the specific promises made by his university." Gundlach, 924 F.Supp. at 688; see also Flynn, 1998 WL 599512 at *4 (same); Dillon, 1997 WL 805216 at *1 (same); Reimer v. Tien, 356 Pa.Super. 192, 514 A.2d 566, 575 (1986) (same). "Such contract actions are viable under Pennsylvania law as long as the complaint identifies the specific manner in which [a d]efendant allegedly breached the contract," Linson v. Trustees of University of Pennsylvania, 1996 WL 479532 at *8 (E.D.Pa.1996) (citing Gundlach, 924 F.Supp. at 689), as well as the "specific benefits [that were] ... allegedly promised ... [and] the means by which ... [they were] promised," Gundlach, 924 F.Supp. at 689; see also Dillon, 1997 WL 805216 at *2 (same). What is not recognized under Pennsylvania law is a contract action wherein what is essentially alleged is a total failure to provide an education, that is a claim the "allegations [of which] ... verge on a claim for 'educational malpractice.'" Dillon, 1997 WL 805216 at *2 (citing Cavaliere v. Duff's Business Institute, 413 Pa.Super. 357, 605 A.2d 397, 403 (1992), and Gundlach, 924 F.Supp. at 689).

 The terms and conditions of a contract between a student and a school can include documents made available by a school to a student such as a general course bulletin, a school catalog, circulars, and regulations. Dillon, 1997 WL 805216 at *2; Linson, 1996 WL 479532 at *8–9. As well, "the laws in force when a contract is entered into become part of the obligation of contract 'with the same effect as if expressly incorporated in its terms.'" DePaul v. Kauffman, 441 Pa. 386, 272 A.2d 500, 506 (1971); see also First Na-

tional Bank of Pennsylvania v. Flanagan, 515 Pa. 263, 528 A.2d 134, 137 (1987) (citing DePaul ); Clairton City School District v. Mary, 116 Pa.Cmwlth. 376, 541 A.2d 849, 851 (1988) (citing Flanagan ); 12 P.L.E.2d Contracts § 163 at 222 (Bender 2001) (citing DePaul and Flanagan).

 Applying the foregoing law to Kirkland's breach of contract claim, the Court holds, as an initial matter, that MCP and Kirkland were parties to an implied-in-fact contract, the terms of which included, inter alia, MCP's Learning Disability Policy, MCP's Special Testing Procedures Policy, and MCP's Academic Diagnostic Testing Policy. However, Kirkland cannot prevail, as a matter of law, on her breach of contract claim only by virtue of her argument—indeed, the Court holds that she actually fails to even state a claim upon which relief can be granted by merely contending—that MCP breached its implied-in-fact contract with her by generally failing to provide her with a fair opportunity to obtain the medical education that MCP agreed to provide to her. The Court so rules because a breach of contract claim that is only predicated upon such an allegation (a) does not constitute an action brought to enforce a specific promise made by MCP, and (b) fails to identify the specific manner in which MCP allegedly breached its implied-in-fact contract. As set forth above, such a contract claim when brought against a school is neither viable under, nor recognized by, Pennsylvania law.

 As for Kirkland's allegation that MCP breached with respect to her, in particular, MCP's Learning Disability Policy, MCP's Special Testing Procedures Policy, and MCP's Academic Diagnostic Testing Policy, the Court holds that a genuine dispute does not exist, and that the Trustee is entitled to a judgment as a matter of

law to the effect that, MCP did not breach such internal policies with respect to her. The Court so holds for several reasons. First, a reasonable jury could only find that MCP did not breach MCP's Learning Disability Policy with respect to Kirkland; accordingly, such jury could only return a verdict for the Trustee on, and a genuine dispute thus cannot exist regarding, such issue. A reasonable jury could only find that MCP did not breach MCP's Learning Disability Policy with respect to Kirkland because (a) such policy obligated MCP to do no more than provide to qualified students additional test-taking time, and (b) Kirkland concedes that MCP provided her with such additional test-taking time. Second, a reasonable jury could only find that MCP did not breach MCP's Special Testing Procedures Policy with respect to Kirkland; accordingly, such jury could only return a verdict for the Trustee on, and a genuine dispute thus cannot exist regarding, such issue. A reasonable jury could only find that MCP did not breach MCP's Special Testing Procedures Policy with respect to Kirkland because (a) such policy obligated MCP to do no more than provide special testing procedures to qualified students who requested the same, and (b) Kirkland fails to allege, let alone produce evidence that would be sufficient to preponderantly establish at trial, that she ever requested from MCP special testing procedures other than additional test-taking time, which additional test-taking time she concedes, as set forth above, was provided to her. Third, a reasonable jury could only find that MCP did not breach MCP's Academic Diagnostic Testing Policy with respect to Kirkland; accordingly, such jury could only return a verdict for the Trustee on, and a genuine dispute thus cannot exist regarding, such issue. A reasonable jury could only find that MCP did not breach MCP's Academic Diagnostic Testing Policy with respect to Kirkland because (a) such policy, according to Kirkland, obligated MCP to do no more than provide psychoeducational testing by a licensed psychologist to those of its students that requested such testing, and (b) Kirkland fails to allege, let alone produce evidence that would be sufficient to preponderantly establish at trial, that she ever requested psychoeducational testing from MCP—indeed, as the Court understands it, Kirkland concedes that MCP offered such testing to Kirkland but that she declined the same in favor of testing performed by a psychologist of her own choosing, *see* Kirkland's Concise Stmt. of Material Facts in Support of Kirkland's Mot. Summ. J. ¶ 9. Fourth, so flimsy would be a contention by Kirkland that MCP breached the express terms of the three internal policies in question with respect to her that the Court suspects that what she really argues instead is that MCP breached such policies only because it allegedly failed to provide to her accommodations that are called for by the ADA and the Rehabilitation Act. Unfortunately for Kirkland, to the extent that she argues as much, she is simply mistaken as a matter of law, notwithstanding that the ADA and the Rehabilitation Act, since they were laws that were in force when the parties' implied-in-fact contract was entered into, became part of the obligation of such contract with the same effect as if such laws were expressly incorporated into the terms of such contract. The preceding conclusion follows because, even though the ADA and the Rehabilitation Act were incorporated into the parties' implied-in-fact contract, the accommodations mandated by such statutes nevertheless became due and owing from MCP only to the extent that they were compelled by such statutes, that is such accommodations, by virtue of the parties' implied-in-fact contract, still only needed to be provided to those of MCP's students who were dis-

abled within the meaning of the two statutes. Stated differently, what the incorporation of the ADA and the Rehabilitation Act into the parties' implied-in-fact contract did not accomplish was to somehow broaden the stand-alone contractual obligations that MCP imposed upon itself via its internal policies such that MCP, by virtue of such internal policies, became obligated to provide ADA/Rehabilitation Act accommodations to its students even if they were not disabled within the meaning of such statutes.

Finally, that the Trustee is presently entitled to a granting of the Trustee's Present Summary Judgment Motion as it pertains to Kirkland's ADA and Rehabilitation Act claims establishes that a genuine dispute does not exist, and that the Trustee is entitled to a judgment as a matter of law to the effect, that MCP neither violated the ADA and the Rehabilitation Act nor consequently thereby breached its contractual duties to Kirkland.

For all of the foregoing reasons, the Court shall grant the Trustee's Present Summary Judgment Motion as it pertains to Kirkland's breach of contract claim.[16] By granting the Trustee's Present Summary Judgment Motion as it pertains to Kirkland's breach of contract claim the Court thereby sustains the Trustee's objection to such claim, which means that such claim shall be disallowed in its entirety.

## V. Kirkland's Rule 56(f) Affidavit.

 In addition to opposing the Trustee's Present Summary Judgment Motion on its merits, Kirkland maintains that such motion should not be granted on the ground that she has been effec-

tively prevented thus far from taking discovery that would enable her to now successfully withstand such motion. In support of such argument by Kirkland, she files an affidavit pursuant to Fed.R.Civ.P. 56(f) (hereafter "Rule 56(f)"), which rule expressly provides that "the court may refuse the application for [summary] judgment" "[s]hould it appear from the affidavits of a party opposing the [summary judgment] motion that the party cannot for reasons stated present ... facts essential to justify the party's opposition," Fed.R.Civ.P. 56(f), 28 U.S.C.A. (West 1992).

> A series of ... [Third Circuit] decisions has established that where a party seeks to avoid the entry of summary judgment under Rule 56(f), he/she must move beyond mere generalities and specify what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained.

Scott v. Graphic Communications Int'l Union, Local 97–B, 2004 WL 516164 (3rd Cir.2004) (citing Pastore v. Bell Telephone Co., 24 F.3d 508, 511 (3rd Cir.1994); Lunderstadt v. Colafella, 885 F.2d 66 (3rd Cir. 1989); Dowling v. City of Philadelphia, 855 F.2d 136, 139–40 (3rd Cir.1988)). As a corollary of the foregoing, "[a] trial court [may] den[y] ... a motion for further discovery under Rule 56(f) ... if 'there is no reason to believe that it [(i.e., such further discovery)] will lead to the denial of a pending motion for summary judgment.'" Simmons Oil Corp. v. Tesoro Petroleum Corp., 86 F.3d 1138, 1144 (Fed.Cir.1996); see also Horvath v. Keystone Health Plan East. Inc., 333 F.3d 450, 458–59 (3rd Cir. 2003) (same); Massachusetts School of

16. The Court rules as well that such reasons establish that the Trustee meets his initial burden with respect to the Trustee's Present Summary Judgment Motion as the same pertains to Kirkland's breach of contract claim.

*Law at Andover, Inc. v. American Bar Association,* 142 F.3d 26, 45 (1st Cir.1998) (same); *Powers v. McGuigan,* 769 F.2d 72, 76 (2nd Cir.1985) (same); *Jones v. City and County of Denver, Colorado,* 854 F.2d 1206, 1211 (10th Cir.1988) (same); *Barker v. Goldberg,* 1987 WL 14084 at *3 (E.D.N.Y.1987) (same).

 In Kirkland's Rule 56(f) affidavit, Kirkland—actually, her counsel (hereafter also referred to as "Kirkland")—makes the following pertinent representations:

 (a) that, in order to effectively oppose the Trustee's Present Summary Judgment Motion, she needs to (i) take depositions of five professors and/or administrators of MCP, and (ii) obtain relevant documents from Drexel University, MCP's successor in interest, *see* Vance Rule 56(f) Aff. ¶¶ 3 & 26–29;

 (b) that such information (i.e., discovery materials) is relevant to various of the requisite elements of Kirkland's three claims, and that, accordingly, such information would allow her to establish such elements and thereby withstand the Trustee's Present Summary Judgment Motion, *see* Vance Rule 56(f) Aff. ¶¶ 26 & 28; and

 (c) that, for various reasons that are set forth in detail in such affidavit, Kirkland has been prevented from taking such depositions and obtaining such relevant documents from Drexel University, *see* Vance Rule 56(f) Aff. ¶¶ 4–25 & 27.

While the Court could quarrel with whether Kirkland's Rule 56(f) affidavit, on its face, actually contains the necessary specificity to satisfy the second of the Third Circuit's criteria used to gauge the sufficiency of a Rule 56(f) affidavit—that is, the Court questions whether, indeed doubts that, it follows that just because such information sought by Kirkland would be relevant to several of the requisite elements of her claims that it would also necessarily enable her to establish such elements—the Court chooses to overlook such facial shortcoming given that it concludes, in any event, that the discovery which Kirkland seeks, as set forth in her Rule 56(f) affidavit, would not allow her to withstand the Trustee's Present Summary Judgment Motion.

The Court concludes that such additional discovery would not enable Kirkland to withstand the Trustee's Present Summary Judgment Motion as it pertains to her ADA and Rehabilitation Act claims because (a) the Court grants such motion as it pertains to such claims on the ground that the Trustee is entitled to a judgment as a matter of law on the issue of whether, that is the requisite element of such claims that, she had a disability within the meaning of the two statutes, *see supra* pp. 802–03 & 806–07, (b) Kirkland fails to aver that such additional discovery would be relevant to the issue of whether, and thus might aid Kirkland in establishing that, she had a disability within the meaning of such statutes, *see* Vance Rule 56(f) Aff. ¶¶ 26 & 28, and (c) the Court thus must conclude that such additional discovery would not be relevant to the issue of whether, and consequently would not enable Kirkland to establish that, she had such a disability. The Court must find that Kirkland fails to aver that such additional discovery would be relevant to the issue of whether she had a disability within the meaning of the ADA and the Rehabilitation Act because she provides in her Rule 56(f) affidavit a laundry list of issues for which she contends that such additional discovery would be relevant, *see* Vance Rule 56(f) Aff. ¶ 26, yet she conspicuously omits from such list (a) the issue of whether she had a disability within the meaning

of the two statutes, and (b) the subissues of whether (i) she actually had ADD to such a degree that it substantially limited her ability to learn, (ii) records exist that would document the same, and (iii) MCP regarded her as having ADD to such a degree that it substantially limited her ability to learn. Indeed, the closest that Kirkland comes to averring that such additional discovery would be relevant to the issue of whether she had a disability within the meaning of the two statutes is when she avers, in her Rule 56(f) affidavit, that such discovery would be relevant to "whether Ms. Kirkland complied with MCP's requirements for establishing that she suffered from AD[ ]D and that AD[ ]D constituted a learning disability," *see* Vance Rule 56(f) Aff. ¶ 26a. However, and unfortunately for Kirkland, it is clear that what she thereby asserts is that such additional discovery would be relevant to the issue of whether she provided MCP with sufficient documentation of her alleged disability, which issue (a) is hotly contested by the parties, and (b) is independent of the threshold issue of whether she had a disability within the meaning of the two statutes.

The Court can imagine that Kirkland (a) would contend that she only failed to request further discovery on the issue of whether she had a disability within the meaning of the ADA and the Rehabilitation Act because she believed, albeit incorrectly, that she had already produced enough evidence to establish that she had such a disability—that she perhaps thought as much is evidenced by the fact that she moved for partial summary judgment with respect to such issue, and (b) might argue that, because of such improvident belief, she is equitably entitled to

withstand the Trustee's Present Summary Judgment Motion for some period of time until she can take further discovery on the issue of whether she had a disability within the meaning of the two statutes. However, and aside from the obvious lack of merit to such an argument, the Court informed Kirkland (actually, her counsel), on numerous occasions at the November 22, 2004 hearing on both of the parties' summary judgment motions, that (a) what was dispositive of the issue of whether she had a disability within the meaning of the two statutes, in accordance with the Court's understanding of the relevant law, was not whether she had ADD, or whether MCP regarded her as having ADD, but rather whether she had, or whether MCP regarded her as having, ADD to such a degree that it substantially limited her learning ability, and (b) the evidence which she and the Trustee submitted for the Court's consideration tended strongly to establish that a reasonable jury could only return a verdict for the Trustee on the material issues of whether she had, or whether MCP regarded her as having, ADD to such a degree that it substantially limited her learning ability. Despite the notice from the Court as just described, Kirkland, neither at the November 22, 2004 hearing nor between such hearing and December 21, 2004—which date is when she informed the Court that she did not wish to settle her claims and that she wished for the Court to rule on the parties' summary judgment motions—supplemented her Rule 56(f) affidavit or her request for additional discovery so as to request further discovery on the issue of whether she had a disability within the meaning of the ADA and the Rehabilitation Act.[17] In light of all

---

17. At the November 22, 2004 hearing Kirkland continued to request precisely the same additional discovery that she describes as necessary to withstand the Trustee's Present Summary Judgment Motion. However, for the reasons set forth above, the Court is constrained to hold that such discovery (a) would not be relevant to the issue of whether Kirk-

**814**

of the foregoing, Kirkland cannot, via Rule 56(f) and on the ground that she is entitled to further discovery, withstand the Trustee's Present Summary Judgment Motion as it pertains to her ADA and Rehabilitation Act claims.

The Court likewise holds that the additional discovery that Kirkland seeks to take as set forth in her Rule 56(f) affidavit would not enable Kirkland to withstand the Trustee's Present Summary Judgment Motion as it pertains to her breach of contract claim. The Court uses the term "likewise" in the preceding sentence because, just as was the case with respect to the Trustee's Present Summary Judgment Motion as it pertains to Kirkland's ADA and Rehabilitation Act claims, Kirkland fails to aver that such additional discovery would, and thus the Court must hold that such additional discovery would not, be relevant to the grounds upon which the Court grants summary judgment in favor of the Trustee respecting Kirkland's breach of contract claim. Therefore, Kirkland cannot, via Rule 56(f) and on the ground that she is entitled to further discovery, withstand the Trustee's Present Summary Judgment Motion as it pertains to her breach of contract claim.

### CONCLUSION

For all of the foregoing reasons, the Court (a) grants the Trustee's Present Summary Judgment Motion, (b) denies Kirkland's partial summary judgment motion with prejudice, (c) thereby sustains the Trustee's objection to Kirkland's ADA, Rehabilitation Act, and breach of contract claims (as well as Kirkland's two proofs of claim that each pertain to such claims), and (d) thus disallows such claims (and such proofs of claim) in their entirety.

land had a disability within the meaning of the ADA and the Rehabilitation Act, and (b) consequently could not enable Kirkland to

Because the Court disallows each of Kirkland's three claims in their entirety, the Court also now directs the Trustee to dissolve the $50,000 claims reserve ($1 Million pre-distribution) regarding Kirkland's claims that was established by this Court's order dated December 11, 2000.

An appropriate order will be entered.